**In re Brenda J. GURNEY, fka Brenda J. Norris, Debtor.**

**Brenda J. GURNEY, fka Brenda J. Norris, Appellant,**

v.

**STATE OF ARIZONA DEPARTMENT OF REVENUE, Appellee.**

BAP No. AZ–95–1165–PaRH.

Bankruptcy No. 92–03663–PCT–RGM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 17, 1995.

Decided Jan. 25, 1996.

David Allegrucci, Mesa, AZ, for appellant.

Tracy S. Essig, Phoenix, AZ, J. Murray Zeigler, Phoenix, AZ, for appellee.

Before: PAPPAS,[1] RUSSELL, and HAGAN, Bankruptcy Judges.

## OPINION

PAPPAS, Bankruptcy Judge:

Brenda J. Gurney ("Appellant"), appeals from an order of the bankruptcy court deter-

mining that the State of Arizona Department of Revenue ("Appellee") holds, in part, an allowed priority tax claim. The essential facts are not in dispute and the question posed in this appeal is purely an issue of law.

## I. FACTS

Appellant has filed four bankruptcy cases. Appellant filed her first Chapter 13[2] petition on November 7, 1988 ("Case 1"). Case 1 was thereafter dismissed on December 27, 1988. Appellant therefore had a pending bankruptcy case for 49 days.

On August 1, 1989, Appellant filed another Chapter 13 petition ("Case 2"). Case 2 was filed 216 days after the dismissal of Case 1. Case 2 was dismissed on June 28, 1990. Therefore, Case 2 was pending for 332 days.

On February 19, 1991, Appellant again filed a Chapter 13 petition ("Case 3"). Case 3 was filed 237 days after the dismissal of Case 2. On December 17, 1991, Case 3 was dismissed. Therefore, Case 3 was pending for 301 days.

On March 27, 1992, Appellant filed a fourth Chapter 13 petition ("Case 4"). Case 4 was filed 99 days after the dismissal of Case 3. Case 4 is still pending and is the case in which this appeal arises.

On April 28, 1993, Appellee filed a proof of claim for taxes owed by Appellant accruing during the period of January, 1986, through December, 1991. Appellee asserted that this tax obligation was entitled to priority under 11 U.S.C. § 507(a)(7)[3](E)(i).[4] At the time of

---

1. Hon. Jim D. Pappas, Chief Bankruptcy Judge, United States Bankruptcy Court for the District of Idaho, sitting by designation.

2. Unless otherwise indicated, all Chapter, Section, and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. Section 507(a)(7) was redesignated as Section 507(a)(8) as a result of the 1994 amendments to the Bankruptcy Code. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 304(c), 108 Stat. 4106 (1994). The 1994 amendments, however, do not apply to cases, such as this case,

commenced before October 22, 1994. Thus, references herein are to the previous designation.

4. Appellee maintains, in its briefing to this Court, that the appropriate provision of the Bankruptcy Code is Section 507(a)(7)(A)(i) because the taxes in question were measured by gross receipts or gross income. Under the Code, Section 507(a)(7)(A) governs the priority status of income taxes while Section 507(a)(7)(E) governs the priority status of excise taxes. Appellee contends that it inadvertently stated to the bankruptcy court during oral argument that the appropriate provision was Section 507(a)(7)(E)(i). Consequently, Appellee asserts that the bankruptcy court incorrectly stated, in its decision, that Ap-

filing the proof of claim, Arizona Revised Statute ("A.R.S.") § 42–1831 granted Appellee an unlimited period of time to collect delinquent taxes.

On March 14, 1994, Appellant filed an objection to Appellee's proof of claim as to the taxes owed for January, 1986, through March, 1989. Appellant argued that Appellee was not entitled to priority treatment for these taxes because the three-year priority period under Section 507(a)(7)(E)(i) had expired. While this Bankruptcy Code provision is not a statute of limitation *per se*, it has the practical effect of a statute of limitation for purposes of priority status in bankruptcy. Appellant claimed that Case 4's filing date controlled the calculation of the three-year period and the determination of priority status. As a result, Appellant contends, the taxes owed for January, 1986 through March, 1989 were outside the priority period.

Appellee responded to the objection. It asserted that the priority provisions of Section 507(a)(7) were tolled by operation of Section 108(c) and A.R.S. § 42–1831 during the pendency of Appellant's three prior bankruptcies.

A hearing on Appellant's objection was held before the bankruptcy court on June 13, 1994, at the conclusion of which the bankruptcy court took the matter under advisement. On January 27, 1995, in a memorandum decision, the bankruptcy court held that the priority periods within Section 507(a)(7)(E) were suspended, pursuant to Section 108(c) and A.R.S. § 42–1831, during the pendency of Appellant's multiple bankruptcy filings. The court further held that although A.R.S. § 42–1831 failed to expressly contain a tolling provision, the state statute entitled Appellee to an unlimited period of time within which to collect delinquent tax liabilities. As a result, this statute, in effect, served as a tolling provision which suspended the priority periods of the Bankruptcy Code during the pendency of Appellant's prior bankruptcy cases.

The bankruptcy court calculated that during the period commencing with the filing of

Case 1 on November 7, 1988, and continuing through the filing of Case 4 on March 27, 1992, Appellant enjoyed the protection of the automatic stay for a total of six hundred eighty-two (682) days of that one thousand two hundred thirty-four (1,234) day period. The bankruptcy court held that Appellee was entitled to a priority claim for taxes accruing during the 682 day period prior to March 27, 1989, the date that would normally be the cutoff date at the time of filing Case 4 but for the filing of Appellant's numerous bankruptcy petitions. Consequently, the bankruptcy court allowed Appellee a priority tax claim for taxes accrued from May 15, 1987, through March 27, 1992. Those taxes due prior to May 15, 1987, would not be allowed priority status. Appellant filed a timely appeal from the bankruptcy court's ruling.

## II. ISSUE

The issue presented is whether the running of the three-year priority period in Bankruptcy Code Section 507(a)(7)(E)(i) is tolled while a debtor has a bankruptcy case pending during that period.

## III. STANDARD OF REVIEW

Issues of statutory construction are reviewed *de novo*. *West v. United States (In re West)*, 5 F.3d 423 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *King v. Franchise Tax Board of California (In re King)*, 961 F.2d 1423 (9th Cir.1992).

## IV. DISCUSSION

The parties have cited, and the Court can locate, no reported cases discussing the suspension of the priority periods within Section 507(a)(7)(E) during the pendency of a prior bankruptcy case. However, both the Ninth Circuit and the Ninth Circuit Bankruptcy Appellate Panel have addressed suspension of the priority periods within Section 507(a)(7)(A). *See West v. United States (In re West)*, 5 F.3d 423 (9th Cir.1993) (addressing the 240–day priority period of Section

---

pellee's claim is entitled to priority under Section 507(a)(7)(E)(i). Given the facts of this case, however, the distinction does not alter this Court's

analysis. The applicable priority period is three years under both Section 507(a)(7)(A)(i) and Section 507(a)(7)(E)(i).

507(a)(7)(A)(ii)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *Brickley v. IRS (In re Brickley),* 70 B.R. 113 (9th Cir. BAP 1986) (addressing the three-year priority period of Section 507(a)(7)(A)(i)). Although these decisions interpret the operation of Section 507(a)(7)(A), because of the similarity in the language and purpose of that provision, the courts' analysis should apply with equal force to Section 507(a)(7)(E).

The relevant cases, including the Bankruptcy Appellate Panel decision in *Brickley* and the Ninth Circuit decision in *West,* interpret and apply several sections of the Bankruptcy Code and the Internal Revenue Code. They are:

■ First, 11 U.S.C. § 108(c), which in relevant part, states that:

if applicable nonbankruptcy law ... fixes a period of commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until ... the end of such period, including any suspension of such period occurring on or after the commencement of the case.

Section 108(c) operates to extend statutes of limitation for creditors as to actions against the debtor, while the creditor is prevented from proceeding outside the bankruptcy court due to the existence of the automatic stay. *West,* 5 F.3d at 425.

Second, 11 U.S.C. § 507(a)(7)(A)(i) and (ii) provides that:

(a) The following expenses and claims have priority in the following order:

. . . .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days ... before the date of the filing of the petition;

■ Third, 11 U.S.C. § 523(a)(1) provides in relevant part that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) ... does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

Section 507(a)(7)(A) accords priority status to taxes that were either due within three years of filing, or were assessed within 240 days of filing. Section 507(a)(7), operating in tandem with Section 523(a)(1)(A), provides that a debtor's tax obligation is not dischargeable if it were incurred within the priority period. Under Section 1322(a)(2), such tax obligations are entitled to payment in full in a Chapter 13 plan. Conversely, if the debtor files for bankruptcy after the priority period expires, the tax debt is dischargeable.

Finally, 26 U.S.C. § 6503(b) declares that:

(b) The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States ... and for six months thereafter.

Under this provision of the Internal Revenue Code ("IRC"), the statute of limitations in Section 6502 for the collection of federal taxes is suspended for any period the taxpayer's assets are in the control of the courts and extended for six months thereafter.

The first case to address the issue of whether the pendency of a previously filed bankruptcy case suspends the running of the priority periods within Section 507(a)(7) was *Brickley v. IRS (In re Brickley),* 70 B.R. 113 (9th Cir. BAP 1986). *Brickley* involved serial filings under Chapter 13 and Chapter 7. In November of 1981, debtors filed a Chapter 13 petition. IRS filed a priority proof of claim for taxes owed within three years of the filing. The Chapter 13 case took several

years to complete, and when it ended, debtors filed for relief under Chapter 7 in October of 1984.

In the Chapter 7 case, the bankruptcy court concluded that debtors' 1979 and 1980 tax obligations retained their priority status, and therefore, were not subject to discharge. In reaching its conclusion, the bankruptcy court determined that the three-year priority period within Section 507(a)(7)(A)(i) did not run during the pendency of the prior Chapter 13 bankruptcy case.

On appeal, the Bankruptcy Appellate Panel affirmed. The Panel determined that Section 108(c) incorporates the tolling provision of IRC § 6503(b) to extend the priority period of Section 507(a)(7)(A)(i) when the taxing authority is hampered from proceeding by a pending bankruptcy case and the existence of the automatic stay. *Brickley*, 70 B.R. at 115.

The Ninth Circuit Court of Appeals found *Brickley* persuasive and adopted its reasoning in *West v. United States (In re West)*, 5 F.3d 423, 427 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). *West* involved multiple filings under Chapter 13. On June 13, 1988, the IRS assessed income taxes for the years 1982 through 1984 against Beverly and Robert Worthen. Two-hundred and twenty days later, on January 19, 1989, the Worthens filed a joint petition under Chapter 13. On May 30, 1990, the Worthens voluntarily dismissed their case. Shortly thereafter, they divorced. On July 27, 1990, fifty-eight days after dismissing their joint case, Beverly West and Robert Worthen filed individual Chapter 13 petitions.

The IRS filed priority proofs of claim in both cases for the 1982–1984 income taxes. The debtors each filed a Chapter 13 plan that classified the IRS claims as general, unsecured claims. The IRS objected to confirmation on the ground that Section 507(a)(7)(A)(ii) required that the plans give priority to the tax claims, and that under Section 1322(a)(2), all priority claims must be paid in full by the plan.

The bankruptcy court overruled the IRS objections, reasoning that the IRS was not entitled to priority because it had assessed the taxes more than 240–days before the debtor's individual petitions. The district court reversed, holding that the debtor's prior bankruptcy case suspended the running of the priority period. On appeal, the Ninth Circuit held that the Section 6503(b) tolling provision, incorporated through Section 108(c), suspends the priority period within Section 507(a)(7)(A)(ii). *West,* 5 F.3d at 427.[5]

Both *West* and *Brickley* hold that Section 108(c) incorporates Section 6503(b) to extend the priority periods of Section 507(a)(7)(A) when the creditor is hampered from proceeding by a pending bankruptcy case and the existence of the automatic stay. *West,* 5 F.3d at 427; *Brickley,* 70 B.R. at 115. This reasoning has gained nearly unanimous support from other courts.

The decisions which follow the reasoning of *West* and *Brickley* recognize that the literal language of Section 108(c) does not provide for the extension of Section 507(a)(7) time periods and yet suspend or extend those periods through the use of other applicable statutes.[6] As noted, Section 108(c) does not expressly refer to time limits established under the Bankruptcy Code, as opposed to

---

**5.** The Ninth Circuit also applied the Section 6503(b) six-month extension period. *Id.* The Court reasoned that because Section 6503(b) is used to suspend the priority period, it is logical to also apply the Section 6503(b) extension period. *Id.*

**6.** *See Montoya v. United States (In re Montoya)*, 965 F.2d 554 (7th Cir.1992) (holding that the time period under Section 507(a)(7) was tolled during the pendency of a previously filed bankruptcy); *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2nd Cir.1993) (acknowledging that Section 108(c) incorporates other federal and state statutes to suspend the deadlines within Section

507(a)); *see also In re Grogan*, 158 B.R. 197 (Bankr.E.D.Cal.1993); *Linder v. United States (In re Linder)*, 139 B.R. 950 (D.Colo.1992); *In re Ross*, 130 B.R. 312 (Bankr.D.Neb.1991); *In re Wise*, 127 B.R. 20 (Bankr.E.D.Ark.1991); *United States v. Deitz (In re Deitz)*, 116 B.R. 792 (D.Colo. 1990); *Stoll v. IRS (In re Stoll)*, 132 B.R. 782 (Bankr.N.D.Ga.1990); *Molina v. United States (In re Molina)*, 99 B.R. 792 (S.D.Ohio 1988). *But see Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993) (finding that under the plain language of Section 108(c), suspensions apply only to non-bankruptcy law and not to the time limits in Section 507(a)(7)).

limitations specified by "applicable nonbankruptcy law." While acknowledging that interpretation of the Bankruptcy Code normally requires a literal reading of the plain language of the statutes, these courts recognize that in those "rare cases" in which the literal application of a statute will defeat the objects and the policy of the law, the intention of the drafters rather than the strict language controls. *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (holding that the drafter's intent controls the interpretation of Section 506(b)); *United States v. American Trucking Assoc.*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940) (asserting that primary purpose in construing a statute is to give effect to congressional intent); *see also Burchinal v. Central Washington Bank (In re Adams Apple)*, 829 F.2d 1484, 1488 (9th Cir.1987) (finding guidance from Congress' overall policy in passing Section 364).

The courts have refused to literally interpret Section 108(c) in this context because to do so would enable a bankruptcy debtor to effect schemes of tax avoidance. A debtor could file, dismiss, and refile bankruptcy cases until the tax priority periods expired, thereby subjecting the tax claims to nonpayment and discharge. *West*, 5 F.3d at 426. This is possible because of the "delicate balance" between priority and discharge of tax claims under Section 507(a)(7) and Section 523(a)(1), respectively. *Id.*

Recognizing the potential for tax avoidance under a literal interpretation of Section 108(c), the courts examined the legislative history of Sections 507(a)(7), 108(c), and 523(a)(1) for guidance. Section 507(a)(7)'s legislative history clearly reveals that Congress intended to give the government the benefit of certain time periods to pursue its collection efforts. *West*, 5 F.3d at 426; *United States v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir.1993). Congress directed that "the tax collector ... should not lose taxes which ... the law has restrained him from collecting." S.Rep. No. 989, 95th Cong., 2d Sess. 14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800. The House Report evinces a similar concern:

An open ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority had an opportunity to collect any taxes due.

H.Rep. No. 595, 95th Cong., 1st Sess. 190 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6150.

Similarly, in its comments about Section 108(c), the Senate Report pronounced that Congress did not intend to allow a taxpayer to escape liability by the expiration of the statute of limitations while its assets are protected by the filing of a bankruptcy case. S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5816–17.

In adopting Section 523(a)(1), Congress recognized that enforcement of tax laws against delinquent tax debtors takes time. Congress indicated that it did not intend to allow tax avoidance through bankruptcy by permitting the discharge of the debt before the taxing authority has had a fair opportunity to collect taxes due. H.Rep. No. 595, 95th Cong., 1st Sess. 190 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6150. Moreover, Congress explained that it was its intent to give the taxing authority at least three full years to pursue such debtors. *Id.*

Given the exceptional circumstances presented in *West* and *Brickley*, and the clear intent expressed by Congress, the Ninth Circuit and the Ninth Circuit Bankruptcy Appellate Panel concluded that departure from the literal language of the Code was justified. Section 108(c) incorporates IRC § 6503(b) to suspend the running of the priority periods in Section 507(a)(7)(A).

The issue in the present appeal, then, is whether A.R.S. § 42–1831 suspends the priority period in Section 507(a)(7)(E)(i) under the *West* and *Brickley* reasoning. 11 U.S.C. § 507(a)(7)(E)(i) provides that:

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition.

A.R.S. § 42–1831, in relevant part, states that:

A. If a person liable to pay any tax neglects or refuses to pay the tax, the department may collect the tax, and such other sums as are sufficient to cover the expenses of the levy, by levy upon all property and rights to property, except property exempt under § 42–1834, belonging to the person or on which there is a lien as provided in this chapter or § 42–312 for the payment of the tax.

C. If any property or right to property upon which a levy has been made under subsection A of this section is not sufficient to satisfy the claim of the department for which the levy is made, the department may as often as may be necessary proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him [sic], together with all expenses, is fully paid.

A.R.S. § 42–1831(a), (c).

With this statutory background, both parties rely on *West* and *Brickley*. Appellee argues that the language in *West* and *Brickley*, and the legislative history of Sections 507(a)(7), 108(c), and 523(a)(1), clearly establish Congress' intent to restrict Appellant's ability to discharge taxes through the filing of multiple bankruptcies. Appellee emphasizes the fact that Appellant filed four bankruptcies and voluntarily dismissed the first three. As a result of the successive bankruptcy filings and the interdiction of the automatic stay, Appellee was prohibited from collecting Appellant's delinquent taxes for a substantial period of time. Now, following expiration of the three year priority period in Section 507(a)(7)(E), Appellant seeks to relegate Appellee's tax claim to a nonpriority,

unsecured status. Appellee regards this as contrary to congressional intent.

▆ Appellant contends that *West* and *Brickley* are limited in their holding, allowing use of Section 108(c) only where a specific tolling provision is present under applicable nonbankruptcy law. The Internal Revenue Code includes a tolling provision for collection of tax claims. Appellant also correctly notes that Arizona's statute does not expressly toll its claim while a taxpayer is in a bankruptcy proceeding and, in fact, the bankruptcy court acknowledged the lack of such a provision. Appellant argues that, as a result, A.R.S. § 42–1831 cannot be used to suspend the priority periods during the pendency of the automatic stay. We note that the obvious reason the Arizona statute does not contain a tolling provision is that it is open ended.[7]

▆ This Panel concludes that A.R.S. § 42–1831 fails to suspend the running of the priority periods within Section 507(a)(7)(E). While motivated to do so, the Panel is unable to extend the reasoning of *West* and *Brickley* to utilize A.R.S. § 42–1831 because that statute fails to encompass an express tolling provision to suspend the running of the priority period. Under *West* and *Brickley*, Section 108(c) merely incorporates tolling provisions from applicable nonbankruptcy law, and therefore, the absence of a tolling provision in the Arizona statute prevents the suspension of the priority period.

However, were the Panel to end its analysis here, the very situation sought to be prevented by Congress and the courts which have addressed the issue—schemes of tax avoidance—would exist. We doubt that such was Congress' intent. Under these facts, and given the clear intent expressed by Congress, this Panel must decide whether the pendency of Appellant's prior bankruptcies suspends the *running* of the priority period on a different basis.

▆ Courts have a legitimate interest in preventing statutes from becoming a shield for serious inequity. Accordingly, it is

---

7. The Arizona Revised Statutes now impose a ten (10) year limitation on the State of Arizona Department of Revenue for the collection of taxes. However, the amendment to A.R.S. § 42–1831 became effective on July 17, 1994, and does not apply to the facts of this case.

proper for a court, under very limited circumstances, to make narrow equitable exceptions to statutory rules. Under these particular facts, we conclude that the bankruptcy courts have the discretion to toll the three-year priority period during the pendency of Appellant's prior bankruptcies under well-accepted equitable principles and the powers conferred upon the bankruptcy courts by Section 105(a).

■ 11 U.S.C. § 105(a) provides that:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In *United States v. Energy Resources Co.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990), the Supreme Court explained that the broad powers conferred by Section 105(a) are consistent with the "traditional understanding" that bankruptcy courts are courts of equity. While Section 105(a) endows bankruptcy courts with broad equitable powers, Section 105(a) may be exercised only in a manner not inconsistent with the provisions of the Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 199, 108 S.Ct. 963, 965, 99 L.Ed.2d 169 (1988); *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods),* 885 F.2d 621, 625 (9th Cir.1989).

The Tenth Circuit Court of Appeals in *United States v. Richards (In re Richards),* 994 F.2d 763 (10th Cir.1993), under similar facts, exercised the bankruptcy court's broad equitable powers under Section 105(a) to order the suspension of the 240–day assessment period in Section 507(a)(7)(A)(ii) during the pendency of the debtor's first bankruptcy case. The *Richards* court reasoned that:

[b]y suspending the 240–day period during the debtor's first bankruptcy case, the bankruptcy court ensured that the government was not deprived of the full benefit of the 240 days within which it could pursue its post-assessment collection efforts. This use of the equitable authority in 11 U.S.C. § 105(a) is not inconsistent with any specific provision of the Bankruptcy Code, and, in our view, is consistent with the underlying philosophy of the Bankruptcy Code.... The Bankruptcy Court's order suspending the 240–day period while [the debtor] was in his first bankruptcy fulfills and preserves Congress's intent to afford the government certain time periods to pursue collection efforts, and at the same time prevents the debtor from avoiding priority by prolonging the initial bankruptcy proceeding. During [the debtor's] first bankruptcy, the government was prevented by the automatic stay provided for in 11 U.S.C. § 362(a) (Supp.1992) from attempting to collect, and it would seem to follow that the 240–day period should not run while [the debtor] was in his first bankruptcy and the government was under the automatic stay.

*Id.* at 765–66. The *Richards* court recognized that:

although the reasoning of the courts which have addressed the precise present problem varies, the results have consistently been the same, i.e., neither the three year period provided for in 11 U.S.C. § 507(a)(7)(A)(i) nor the 240 day period provided for in 11 U.S.C. § 507(a)(7)(A)(ii) runs during the pendency of the first of two successive bankruptcies.

*Id.* at 766.

■ This Panel concludes as well that the equitable authority found in Section 105(a) is broad enough to suspend the priority periods in Section 507(a)(7)(E)(i) and that the exercise of such authority under these facts is not inconsistent with any specific provision of the Code. Moreover, an equitable tolling of the priority period here is in accord with the underlying philosophy of the Code as expressed in the legislative history discussed above.

■ Section 105(a) allows the bankruptcy courts to inject traditional equitable principles into the operation of the bankruptcy system to prevent abuse of the drafter's intent. Thus, our approach is premised upon

the doctrine of equitable tolling. Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the operation of statutes of limitations. The use of this tenet in the federal courts to toll limitations periods on equitable grounds is a well-settled part of our jurisprudence.

■ The Supreme Court has declared that equitable tolling principles are "read into every federal statute", *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *see also American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1974); *Burnett v. New York Central R. Co.,* 380 U.S. 424, 427–28, 85 S.Ct. 1050, 1054–55, 13 L.Ed.2d 941 (1965); *Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 231–34, 79 S.Ct. 760, 761–62, 3 L.Ed.2d 770 (1959), and that "recognizing judicial power to toll statutes of limitation in federal courts" does not entail "breaking new ground", *American Pipe,* 414 U.S. at 558, 94 S.Ct. at 768. Moreover, even when Congress announces a limitations period, the federal courts are never powerless to equitably toll the limitations period to prevent injustice unless Congress expressly provides otherwise. *See American Pipe,* 414 U.S. at 559, 94 S.Ct. at 769; *see also Bowen v. New York,* 476 U.S. 467, 479–81, 106 S.Ct. 2022, 2029–30, 90 L.Ed.2d 462 (1986); *Block v. North Dakota,* 461 U.S. 273, 287–88, 103 S.Ct. 1811, 1819–20, 75 L.Ed.2d 840 (1983); *Fadem v. United States,* 52 F.3d 202, 205 (9th Cir.1995).

■ The Supreme Court pronounced that it would invoke equitable tolling principles when consistent with congressional intent and called for by the facts of the case. Accordingly, equitable tolling is appropriately applied when it would effectuate: (1) the policies underlying the statute, and (2) the purposes underlying the limitations period. *See, e.g., American Pipe,* 414 U.S. at 554–56, 94 S.Ct. at 766–68; *Burnett,* 380 U.S. at 427–28, 85 S.Ct. at 1054–55; *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967). Thus, we must determine whether equitable tolling is consonant with congressional intent and the policies and purposes of the legislative scheme, and whether

tolling is appropriate on these facts. *See American Pipe,* 414 U.S. at 557–58, 94 S.Ct. at 767–68; *Honda,* 386 U.S. at 501, 87 S.Ct. at 1197; *Burnett,* 380 U.S. at 427, 85 S.Ct. at 1054; *see also Glus,* 359 U.S. at 234, 79 S.Ct. at 762; *Holmberg,* 327 U.S. at 395, 66 S.Ct. at 584; *see also Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394, 396 (9th Cir.) (citing *American Pipe* and *Burnett*), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980).

We conclude that the first prong of the test is satisfied. Priority status through Section 507(a)(7) ensures that delinquent tax liabilities are not evaded inequitably by a bankruptcy filing. The legislative history and the purpose of Section 507(a)(7) discussed above clearly reveal a strong congressional intent to prevent tax avoidance. This purpose would be thwarted if the Appellant could escape liability by serial filings. The remedial policies underlying Section 507(a)(7)(E)(i)—which ensures that the taxing authority is not deprived of the full benefit of the priority period within which it retains its priority status—would be preserved by equitable tolling in this case.

Equitable tolling must also effectuate the purposes underlying the three-year limitations period. The policy underlying most limitation periods is primarily for the protection of the defendant and the courts, from litigation of stale claims when plaintiffs have slept on their rights and evidence may have been lost or witnesses' memories faded. *See, e.g., American Pipe,* 414 U.S. at 554, 94 S.Ct. at 766; *Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 597 (9th Cir.1991), *rev'd on other grounds,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). As stated by the Ninth Circuit in *Seattle Audubon:*

> All statutes of limitations are based upon the assumption that one with a valid claim will not delay in bringing it for an unreasonable period of time; but, when a plaintiff has been denied the means to relief, the basis of the assumption has been destroyed.

*Seattle Audubon,* 931 F.2d at 596 (quoting *Osbourne v. United States,* 164 F.2d 767 (2d Cir.1947)).

In this case, Appellee did not fail to act with due diligence. Appellee's efforts to collect the delinquent taxes were blocked by external forces, principally the automatic stay. In addition, Appellant will not be unjustly prejudiced by tolling the priority period. This is not a case in which Appellant will be forced to defend a stale claim. And, even if a portion of the delinquent tax claim could be labeled as stale, it gained such status through Appellant's actions. Further, there is no showing that memories have faded, witnesses have not disappeared, and the necessary documents are not accessible.

■■■ The equities in favor of tolling are compelling. In this case, Appellant systematically filed and voluntarily dismissed Case 1, Case 2, and Case 3. During this period, and continuing through the filing of Case 4, Appellant enjoyed the protection of the automatic stay for a total of six hundred eighty-two (682) days of the one thousand two hundred thirty-four (1,234) day period. It is undisputed that Appellant's prior bankruptcies and the pendency of the automatic stay worked as a barrier preventing Appellee's collection efforts. As observed by the Ninth Circuit Court of Appeals, federal courts should apply the doctrine of equitable tolling when "circumstances beyond the [creditor's] control make it impossible for [creditor] to [proceed]." *Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590, 595 (9th Cir.1991), *rev'd on other grounds*, 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). Those circumstances exist here.

### V. CONCLUSION

The Panel disagrees with the bankruptcy court's conclusion that Section 108(c) incorporates A.R.S. § 42–1831 and extends the priority period under Section 507(a)(7)(E). The state statute contains no applicable tolling provision that Section 108(c) can access.

However, the Panel concludes that Section 105(a) should be invoked to apply the doctrine of equitable tolling to this case. Use of equitable tolling in a rare case such as this is in accord with the underlying philosophy of the Code and serves the important interest of accommodating collection of delinquent tax liabilities. Application of the equitable doc-

trine through Section 105(a) is not inconsistent with the purposes of Section 507(a)(7)'s priority period or other Code provisions, and will not cause unjust prejudice to Appellant. Under these facts, tolling serves the purposes Congress sought to achieve. Accordingly, we AFFIRM the bankruptcy court's order.