# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————

No. 95-3928

————————

In re:  William Winston Waugh  *
     Debtor                          *
                                     *
                                     *

William Winston Waugh,       *
                                     *  Appeal from the United States
     Plaintiff - Appellant,   *  District Court for the
                                     *  District of Minnesota.
     v.                            *
                                     *
Internal Revenue Service,    *
                                     *
     Defendant - Appellee.    *

————————

Submitted:  October 24, 1996

Filed:  March 26, 1997

————————

Before WOLLMAN, FLOYD R. GIBSON, and BEAM, Circuit Judges.

————————

FLOYD R. GIBSON, Circuit Judge.

This appeal concerns the issue of whether the priority period of 11 U.S.C. § 507(a)(8)(A)(i) (1994),[1] is suspended or tolled

---

[1] Congress renumbered 11 U.S.C. § 507(a)(7) to 11 U.S.C. § 507(a)(8) in 1994.  See The Bankruptcy Reform Act of 1994  § 304, 11 U.S.C. § 507(a)(8) (1994).  The Bankruptcy Reform Act of 1994 does not apply to this case, which was commenced before the October 22, 1994 effective date.  See The Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 702, 108 Stat. 4106, 4150 (1994). However, because the change is not substantive, we refer to section 507(a)(8) throughout the opinion.

during the pendency of a Chapter 7 debtor's prior bankruptcy proceedings. We hold that it is and therefore affirm the district court judgment.

## I. BACKGROUND

Appellant William Winston Waugh filed a tax return for the 1987 tax year by the April 15, 1988 deadline. However, Waugh failed to remit the tax due to the Internal Revenue Service (IRS). On July 1, 1988, Waugh filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington. The court converted Waugh's Chapter 13 case to a Chapter 11 case on September 15, 1988. On July 27, 1990, the bankruptcy court revoked Waugh's Chapter 11 plan. Waugh appealed the revocation, but on February 6, 1991, the court finally dismissed his Chapter 11 plan. From July 1, 1988, until February 6, 1991, the automatic stay prevented the IRS from collecting Waugh's 1987 taxes. See 11 U.S.C. § 362(a)(6) (1994).

Waugh filed a Chapter 7 bankruptcy petition on May 9, 1991, and received his discharge on August 27 of the same year. Waugh received a refund of $11,019 for the 1993 tax year, which he directed the IRS to apply to his 1989 tax liability along with a cash payment of $847. However, the IRS applied the refund and the cash payment to Waugh's outstanding 1987 tax liability. On June 8, 1994, the IRS served Waugh with Notices of Intent to Levy upon his outstanding 1987 and 1989 tax liabilities.[2] Waugh commenced an adversary proceeding on September 9, 1994, seeking a declaratory judgment that his 1987 tax liability was discharged in his Chapter 7 bankruptcy proceeding. Waugh filed a motion for summary judgment

---

[2]The IRS claimed Waugh owed $157,631.36 for the 1987 tax year and $15,620.52 for the 1989 tax year.

claiming that his 1987 tax liability should have been discharged in his Chapter 7 bankruptcy proceeding because the priority period of section 507(a)(8)(A)(i) was not suspended during his prior bankruptcy cases. The IRS likewise filed a motion for summary judgment contending that because the automatic stay prohibited the IRS from collecting Waugh's 1987 tax during the prior bankruptcy proceedings, the priority period of section 507(a)(8)(A)(i) should have been suspended. The bankruptcy court[3] adopted the majority position on this issue and held that because the priority period of section 507(a)(8)(A)(i) was suspended during Waugh's prior bankruptcy proceedings, his 1987 tax liability was nondischargeable in his subsequent Chapter 7 proceeding. The district court[4] affirmed the bankruptcy court's decision, and Waugh appeals. For the reasons set forth below, we affirm.

## II.  DISCUSSION

This Court sits as a court of second review in bankruptcy cases and therefore applies the same standard of review as the district court. See Southern Technical College, Inc. v. Hood, 89 F.3d 1381, 1383 (8th Cir. 1996). We review the bankruptcy court's grant of summary judgment de novo. See id. Therefore, "[i]f the record shows that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. (citations omitted).

---

[3]The HONORABLE DENNIS D. O'BRIEN, Chief United States Bankruptcy Judge for the District of Minnesota.

[4]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

On appeal, Waugh contends that his 1987 tax liability was discharged in his Chapter 7 bankruptcy proceeding because the three-year priority period of 11 U.S.C. § 507(a)(8)(A)(i) (1994), and the three-year dischargeability period of 11 U.S.C. § 523(a)(1)(A) (1994), were not suspended or tolled during his prior bankruptcy proceedings. The IRS counters that Waugh's 1987 tax liability was not discharged in his Chapter 7 proceeding because 11 U.S.C. § 108(c) (1994) and 26 U.S.C. § 6503(b) and (h) (1994), operate to suspend the three-year priority period of section 507(a)(8)(A)(i) during the pendency of bankruptcy proceedings.

Ordinarily, in a Chapter 7 proceeding, calculating which tax debts are dischargeable is a relatively simple process. See 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8)(A)(i) (1994). Section 523(a)(1)(A),[5] by reference to section 507(a)(8)(A)(i),[6] provides

---

[5]Section 523 provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt --
    (1) for a tax or a customs duty --
      (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; . . . .

11 U.S.C. § 523(a)(1)(A) (1994).

[6]Section 507 provides in pertinent part:

(a) The following expenses and claims have priority in the following order:

                    *       *       *

    (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for --
      (A) a tax on or measured by income or gross receipts --
        (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including

-4-

that taxes for which the return was due more than three years prior to a bankruptcy filing are dischargeable.  Because Waugh's 1987 tax return was due April 15, 1988, Waugh's 1987 tax liability would have become dischargeable on April 15, 1991.  Therefore, when Waugh filed his Chapter 7 bankruptcy petition on May 9, 1991, his 1987 tax liability could have been discharged.  However, Waugh's previous bankruptcy filings complicate this usually simple calculation.  The IRS contends that because the automatic stay prevented the IRS from collecting Waugh's 1987 taxes during his prior bankruptcy proceedings, see 11 U.S.C. § 362(a)(6) (1994),[7] the priority period of section 507(a)(8)(A)(i) should have been tolled during those prior proceedings.  We agree.

This case illustrates the competing interests Congress sought to balance when drafting the Bankruptcy Code:

> A three-way tension thus exists among (1) general creditors, who should not have the funds available for

_____

> extensions, after three years before the date of the filing of the petition; . . . .

11 U.S.C. § 507(a)(8)(A)(i) (1994).

[7]We note that under the Bankruptcy Reform Act of 1994 § 116, 11 U.S.C. § 362(b)(9) (1994), section 362(b)(9) was amended to "lift the automatic stay as it applies to a tax audit, a demand for tax returns, assessment of an uncontested tax liability, or the making of certain assessments of tax and issuance of a notice and demand for payment for such assessment."  H.R. Rep. No. 103–835, at 43 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3352.  The amendment, however, does not lift the automatic stay as it applies to the collection of taxes.  See Headrick v. Georgia (In re Headrick), 203 B.R. 805, 810 (Bankr. S.D. Ga. 1996).  Therefore, if the 1994 amendment to section 362(a)(9) applied in this case, it would not alter our analysis of the automatic stay's effect on the priority period of section 507(a)(8).

payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.

S. Rep. No. 95-989, at 14 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5800.  To satisfy the interests of the "tax collector," Congress extended a three-year priority period to tax collecting authorities.  Id.  Although a debtor is permitted to discharge tax debts which have grown "stale," Congress realized that "[a]n open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due."  H.R. Rep. No. 95-595, at 190 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6150.

The Bankruptcy Code does not contain any provisions which explicitly suspend the priority period of section 507(a)(8)(A)(i) while a debtor is engaged in bankruptcy proceedings. However, section 108(c) provides as follows:

> (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of --
>   (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>   (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or

        1301 of this title, as the case may be, with respect to such
        claim.

11 U.S.C. § 108(c) (1994).  Subsections 6503(b) and (h) of the Internal
Revenue Code provide:

    § 6503. Suspension of running of period of limitation

                        *        *        *

    (b) Assets of taxpayer in control or custody of court

        The period of limitations on collection after assessment
    prescribed in section 6502 shall be suspended for the period
    the assets of the taxpayer are in the control or custody of the
    court in any proceeding before any court of the United States
    or of any State or of the District of Columbia, and for 6
    months thereafter.

                        *        *        *

    (h) Cases under title 11 of the United States Code

        The running of the period of limitations provided in section
    6501 or 6502 on the making of assessments or collection shall,
    in a case under title 11 of the United States Code, be
    suspended for the period during which the Secretary is
    prohibited by reason of such case from making the assessment or
    from collecting and --
            (1) for assessment, 60 days thereafter, and
            (2) for collection, 6 months thereafter.

26 U.S.C. § 6503(b), (h) (1994).


        Waugh urges this Court to determine that because section 108(c)
applies only to "nonbankruptcy law," the statute does not act to suspend
the priority period of section 507(a)(8)(A)(i), which is itself part of the
Bankruptcy Code.  We recognize that "[t]he plain meaning of legislation
should be conclusive, except in the 'rare cases  [in which] the literal
application of a statute will produce a result demonstrably at odds with
the intentions of its drafters.'"  United States v. Ron Pair Enters., Inc.,
489 U.S. 235, 242 (1989)(alteration in original)(quoting Griffin v. Oceanic

                              -7-

<u>Contractors, Inc.</u>, 458 U.S. 564, 571 (1982)); <u>accord</u> <u>Missouri v. L.J.</u> <u>O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.)</u>, 64 F.3d 1146, 1150 (8th Cir. 1995).  However, we conclude that this is such a "rare case."  If we applied the plain meaning of section 108(c) and held that the priority period of section 507(a)(8)(A)(i) is not suspended during bankruptcy proceedings, Congress's intent to afford the IRS a three-year priority period for the collection of taxes certainly would be frustrated.  Therefore, we conclude that the three-year priority period of section 507(a)(8)(A)(i) is suspended by 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(b) and (h), for the time that the automatic stay prevents the IRS from collecting outstanding tax debts.

The legislative history of 11 U.S.C. § 108(c) supports the conclusion that Congress intended for section 108(c) and 26 U.S.C. § 6503(b) and (h) to suspend the priority period of section 507(a)(8)(A)(i):

> In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter (sec. 6503(b) of the Code).  The amendment applies this rule in a title 11 proceeding.  Accordingly, the statute of limitations on collection of a nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court.  This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S. Rep. No. 95-989, at 31 (1978), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5816-17.  Although the plain language of section 108(c) states that it tolls priority periods only in nonbankruptcy cases, we conclude that Congress intended 11 U.S.C. § 108(c) and 26 U.S.C.

§ 6503(b) and (h) to toll the three-year priority period of 11 U.S.C. § 507(a)(8)(A)(i). Therefore, because the automatic stay prevented the IRS from collecting Waugh's tax debt from July 1, 1988 until February 6, 1991, the three-year priority period of section 507(a)(8)(A)(i) was suspended during that time.

The majority of courts which have decided this issue have similarly determined that 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(b) and (h) operate to suspend the three-year priority period of 11 U.S.C. § 507(a)(8)(A)(i).[8] Most recently, the Court of Appeals for the Third Circuit recognized that "[t]o limit § 507(a) in this regard would lead to absurd results, as the government would lose its priority claim to back taxes as a result of the taxpayer's abuse of the bankruptcy process." In re Taylor, 81 F.3d 20, 23 (3d Cir. 1996). For example, in Waugh's case, the automatic

---

[8] See In re Taylor, 81 F.3d 20, 24 (3d Cir. 1996); Montoya v. United States (In re Montoya), 965 F.2d 554, 557 (7th Cir. 1992); Brickley v. United States (In re Brickley), 70 B.R. 113, 115 (9th Cir. B.A.P. 1986); Shedd v. United States (In re Shedd), 190 B.R. 692, 694 (Bankr. M.D. Fla. 1996); In re Eysenbach, 183 B.R. 365, 369 (W.D.N.Y. 1995); Teeslink v. United States (In re Teeslink), 165 B.R. 708, 712-13 (Bankr. S.D. Ga. 1994); In re Ross, 130 B.R. 312, 313 (Bankr. D. Neb. 1991); In re Wise, 127 B.R. 20, 22 (Bankr. E.D. Ark. 1991); Florence v. IRS (In re Florence), 115 B.R. 109, 112-13 (Bankr. S.D. Ohio 1990); cf. West v. United States (In re West), 5 F.3d 423, 426 (9th Cir. 1993) (holding that 26 U.S.C. § 6503, incorporated through 11 U.S.C. § 108(c), operates to extend the priority period of 11 U.S.C. § 507(a)(8)(A)(ii)), cert. denied, 511 U.S. 1081 (1994); United States v. Richards (In re Richards), 994 F.2d 763, 765 (10th Cir. 1993) (holding that 11 U.S.C. § 105(a), in addition to 26 U.S.C. § 6503 and 11 U.S.C. § 108(c), operates to extend the priority period of 11 U.S.C. § 507(a)(7)(A)(ii)). But see Quenzer v. United States (In re Quenzer), 19 F.3d 163, 165 (5th Cir. 1993) (holding that under the plain language of section 108(c) the statute does not suspend the priority period of section 507(a)(8)); Clark v. IRS (In re Clark), 184 B.R. 728, 730-31 (Bankr. N.D. Tex. 1995) (same); Gore v. United States (In re Gore), 182 B.R. 293, 300-01 (Bankr. N.D. Ala. 1995) (same).

stay prevented the IRS from collecting Waugh's 1987 taxes from July 1, 1988, until February 6, 1991.   See 11 U.S.C. § 362(a)(6) (1994). Consequently, not even three months had passed from the time Waugh filed his tax return on April 15, 1988, until the IRS was stayed from collecting taxes on July 1, 1988.  Were we to adopt Waugh's limited interpretation of 507(a)(8)(A)(i)'s priority period, future tax debtors could abuse the bankruptcy process by remaining tied up in bankruptcy proceedings until the three-year lookback period of section 507(a)(8)(A)(i) expired, then voluntarily dismissing the bankruptcy petition and refiling once the tax liability became dischargeable.  We do not imply that Waugh had ill intentions when he filed his successive bankruptcy petitions.  We merely use his case to illustrate how future bankruptcy petitioners could abuse the bankruptcy process if section 108(c) does not operate to suspend the priority period of section 507(a)(8)(A)(i).  We determine that Congress did not intend to allow such an abuse of the bankruptcy process.

Waugh contends that the potential for abuse would be better dealt with on a case-by-case basis through the bankruptcy court's broad equitable powers under 11 U.S.C. § 105(a) (1994).  However, we conclude that such a case-by-case examination of a debtor's intent in filing successive bankruptcy petitions would be extremely burdensome.  Furthermore, such an approach is unnecessary because 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(b) and (h) operate to suspend the three-year priority period of section 507(a)(8)(A)(i).

## III.  CONCLUSION

For the reasons stated above, we affirm the decision of the district court.

AFFIRMED.

A true copy.

    Attest:


       CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.