**In re Anthony & Patricia TARULLO, Debtors.**

**No. 97–12412.**

United States Bankruptcy Court, N.D. New York.

Dec. 28, 1999.

Michael Jude O'Connor, O'Connor, O'Connor, Breese & Fi, Albany NY, for Debtors.

Andrea E. Celli, Albany, NY, Chapter 13 Trustee.

## MEMORANDUM–DECISION AND ORDER

ROBERT E. LITTLEFIELD, JR., Bankruptcy Judge.

The matter before the court is Debtors' Motion Objecting to Claim Pursuant to 11 U.S.C. § 502. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(B) and 1334(b).

### FACTS

The court makes the following findings of fact based on the parties' joint stipulation of facts and the proof of claim filed by the Internal Revenue Service ("IRS"):

The Debtors have filed four bankruptcy petitions. On June 23, 1989, they filed their first Chapter 13 petition. According to the court docket, dismissal of the first petition occurred on June 23, 1992. On June 19, 1992, the Debtors filed their second Chapter 13 petition which was dismissed on March 8, 1993. They filed their third Chapter 13 petition on March 3, 1993; they converted this Chapter 13 case to a Chapter 7 case on May 21, 1996. The Debtors received a discharge in their third case on October 15, 1996. On May 8, 1997, the Debtors filed their fourth bankruptcy petition, the instant Chapter 13 case.

In the instant case, the IRS filed a proof of claim for unsecured priority taxes totaling $11,356.55 and unsecured general taxes totaling $2,204.39. The priority tax claim includes income taxes for the taxable years ending December 31, 1989, December 31, 1990, December 31, 1992, December 31, 1995 and December 31, 1996. The parties do not dispute the amount of taxes due; it appears the IRS based its claim on filed tax returns. The parties agree that the IRS has not had three years to collect the unpaid priority taxes at issue. Since June 23, 1989, other than the less than seven month time period between the discharge date of their third bankruptcy case and the filing date of their fourth case, the Debtors have received continual protection from collection via the automatic stay provisions of 11 U.S.C. § 362(a).

### DISCUSSION

■ The matter before the court involves a direct issue of law. The IRS states the issue and its position as follows:

The question for this Court to decide is whether the three year priority period under 11 U.S.C. § 507(a)(8)(A)(i) was tolled during the pendency of the debtors' prior bankruptcy filings. If it was tolled, the three tax years which the debtors seek to reclassify (and upon which the United States has been free to collect for only 205 days) clearly would fall within the three year period for priority status, required to be paid in full in the debtors' Chapter 13 plan. *See* 11 U.S.C. § 1322(a)(2).

(United States' Response to Debtor's Objection to Claim at 2.)

The Debtors agree with the statement of the issue, but, not surprisingly, their position differs:

The issue before this Court is whether the three-year priority period under 11 U.S.C. § 507(a)(8)(A)(i) was tolled during the pendency of the Debtors' prior bankruptcy filings. The Debtors' position is that, to the extent that there are Internal Revenue Code 1040 taxes owed that were more than three (3) years old prior to the filing of the Petition, those claims are general unsecured claims notwithstanding the prior bankruptcy filings.

(Debtors' Memorandum of Law at 4.)

Five United States Courts of Appeal have held that a prior bankruptcy petition filing tolls the priority period calculation

under 11 U.S.C. § 507(a)(7)(A). *See In re Waugh,* 109 F.3d 489 (8th Cir.1997), *cert. denied,* 522 U.S. 823, 118 S.Ct. 80, 139 L.Ed.2d 38 (1997);[1] *In re Taylor,* 81 F.3d 20 (3d Cir.1996); *In re West,* 5 F.3d 423 (9th Cir.1993), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *In re Richards,* 994 F.2d 763 (10th Cir.1993); *In re Montoya,* 965 F.2d 554 (7th Cir. 1992). *See also, In re Gurney,* 192 B.R. 529 (9th Cir. BAP 1996); *In re Brickley,* 70 B.R. 113 (9th Cir. BAP 1986). The Third, Seventh, Eighth and Ninth Circuits relied on the tolling provisions of 11 U.S.C. § 108(c), in conjunction with 26 U.S.C. § 6503,[2] finding that the period for determining priority status under section 507(a)(7)(A) is tolled while a debtor's bankruptcy petition is pending. *In re Taylor,* 81 F.3d at 24; *In re Montoya,* 965 F.2d at 557–58; *In re Waugh,* 109 F.3d at 491, 493; *In re West,* 5 F.3d at 427. The Tenth Circuit rejected the section 108(c) rationale, but it held that the bankruptcy court could use its equitable powers under section 105(a) to suspend section 507(a)(7)'s time periods. *In re Richards,* 994 F.2d at 765.

The Second Circuit has not decided whether section 108(c) or section 105(a) suspends the time period for calculating priority tax claims under section 507(a)(8), but the IRS believes *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067 (2d Cir.1993), is instructive. In *Aslanidis,* the issue was whether the statute of limitations had run on a maritime cause of action. *Aslanidis,* 7 F.3d at 1069. The appellant (a creditor who obtained a lift stay in the bankruptcy case) argued that section 108(c) provided for tolling of all externally imposed statutes of limitations. *Id.* at 1072. Beginning its inquiry with the plain language of the statute, the Second Circuit stated:

> Commencing with the plain meaning, we observe that by its terms § 108(c) does not provide for tolling of any externally imposed time bars, such as those found in the two maritime statutes of limitations.... The reference in § 108(c)(1) to "suspension" of time limits clearly does not operate in itself to stop the running of the statute of limitations; rather, this language merely incorporates suspensions of deadlines that are expressly provided in *other* federal or state statutes. *Aslanidis,* 7 F.3d at 1073.

The Second Circuit also focused on the use of the word "suspension" in section 108(c). In doing so, the court further stated:

> Any ambiguity with respect to this "suspension" reference in § 108(c)(1) is cleared up by examining the provision's legislative history. This history makes evident that § 108(c)(1) refers to only "special suspensions" that are found in non-bankruptcy provisions such as the Internal Revenue Code. *Id.*

The IRS believes the Second Circuit clearly recognized 26 U.S.C. § 6503(h)'s effect of suspending the statute of limitations and the resulting tolling of the priority period calculation of a debtor's tax liabilities under the Bankruptcy Code. For the reasons discussed below, this court

---

**1.** The Eighth Circuit actually looked at the priority period calculation under section 507(a)(8)(A), not 507(a)(7)(A). *Waugh,* 109 F.3d at 491–92. Since October 22, 1994, section 507(a)(8) has governed the time period calculations covering priority tax claims.

**2.** 26 U.S.C. Sec. 6503(h) provides:

The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and ...

(2) for collection, 6 months thereafter.

does not view the Second Circuit's dicta in the same way.

The Fifth and Eleventh Circuits have looked at the "plain meaning" of the time period specified in section 507(a)(8)(A) and have held that the time period is not suspended during the pendency of a prior bankruptcy case. *In re Quenzer*, 19 F.3d 163, 165 (5th Cir.1993); *In re Morgan*, 182 F.3d 775 (11th Cir.1999).³ Like the United States Supreme Court has stated on numerous occasions, if the statutory language is unambiguous, then the court is bound by its plain language. *See, e.g., Connecticut Nat'l. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The Debtors rely upon the bankruptcy court's reasoning in *Nolan v. United States*, 205 B.R. 885 (Bankr.M.D.Tenn. 1997). The IRS argues that the *Nolan* decision "ignores the absurd result that flows from ignoring the intention of Congress in enacting 26 U.S.C. [§ ]6503(h). That section of the Internal Revenue Code clearly contemplates the tolling of the period for calculating priority status and dischargeability during the pendency of a bankruptcy petition." (United States' Response to Debtor's Objection to Claim at 4.) The IRS asserts that if this court followed *Nolan*, it would be forced to move to lift the automatic stay in every case it files a tax claim in order to preserve its ability to ever collect unpaid tax liabilities. (United States' Response to Debtor's Objection to Claim at 5.) According to the IRS, if it

has not lifted the automatic stay and the debtor files a subsequent bankruptcy proceeding, it would be forced to litigate each and every such case in order to determine whether there was any attempted fraud or manipulation of the bankruptcy case in an attempt to inappropriately defeat the IRS's collection rights. (United States' Response to Debtor's Objection to Claim at 5.) Because the IRS is a creditor in a large percentage of bankruptcy cases, it believes the resulting increased caseload would swamp the already overloaded docket of this and every other bankruptcy court. (United States' Response to Debtor's Objection to Claim at 5.)

In many of the cases cited by the Debtors, the courts indicated that if Congress had intended for the time periods specified in section 507(a)(8)(A)(i) to be suspended during prior bankruptcy cases, it could have easily made that intention clear, as it did with respect to offers in compromise pending between the taxpayer and the IRS, by specifically providing for tolling in sections 507(a)(8) and or 523. *See, e.g., Nolan*, 205 B.R. at 890.⁴ This court could not agree more. Section 108(c)'s language is clear; it allows for the tolling of a statute of limitations when nonbankruptcy law provides for it and when needed to commence or continue a civil action in "a court other than a bankruptcy court" on a claim against the debtor. 11 U.S.C. § 108(c) (emphasis added). Here, the Internal Revenue Code (i.e., "nonbankruptcy law") does provide for tolling, but the commencement or continuation of a civil action

---

**3.** Debtors would have this court consider the Eleventh Circuit decision *In re Burns*, 887 F.2d 1541 (11th Cir.1989), as instructive on the issue of section 108(c)'s application in a section 507(a)(8) context. However, the Eleventh Circuit did not look at section 108(c) in conjunction with section 507(a)(8) in that case. In fact, it did not even consider section

108(c)'s application in the section 523(a)(7) (dischargeability) context that was before it.

**4.** In fact, if the legislation pending before Congress in a proposed revision to section 507(a)(8)(A) passes, this issue may be completely resolved in the future. *See* H.R. 106–123(I), 106th Cong. § 805 (1999).

is occurring in this court, thus, it is most definitely not occurring in "a court other than a bankruptcy court."

Despite the IRS's belief that the Second Circuit has already provided instruction on the section 108(c) issue presently before the court, the issue in *Aslanidis* involved a maritime cause of action the appellant wanted to pursue in a nonbankruptcy court. Although the court included some of the legislative history of section 108(c) in its dicta, the issue the court needed to address was the meaning of the word "suspension." The Second Circuit's reference to the "Internal Revenue Code" in *Aslanidis* has no bearing here where the challenge is not whether "suspension" is an ambiguous term but whether the statute can be applied in a section 507(a)(8) context where the debtor has filed successive petitions. Because the Second Circuit has decided the meaning of the word "suspension" and neither side argues that the statute is ambiguous in any other way, under the rules of statutory construction, the plain meaning of section 108(c)'s words governs. That does not necessarily mean, however, that tolling cannot occur in this case.

The Debtors accurately point out that many courts have adopted the "plain meaning" interpretation of section 108 and use section 105 to toll the priority period calculation. (Debtors' Memorandum of Law at 7.) Section 105(a) grants the bankruptcy court the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" and to "[take] any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). In instances where courts have relied upon section 105(a) to equitably toll the priority period, those courts usually find that the serial filings and the accompanying automatic stay act as a barrier, preventing the IRS's collection efforts. *See, e.g., In re Gurney*, 192 B.R. at 538–39 (tolling not provided for under state statute, but section 507(a)(7)'s purpose and legislative history would be thwarted if debtor could avoid liability by four serial filings, therefore, equitable tolling via section 105(a) permitted to ensure that the taxing authority receives the full benefit of the priority period); *In re Richards*, 994 F.2d at 765 (application of section 105(a) based on the policy of ensuring that the government has adequate time to collect unpaid taxes unimpeded by the debtor's two intervening bankruptcy petitions). Therefore, those courts have used section 105 to toll section 507's priority period calculation.

 The court will not make a section 105 determination at this time. Although the parties have agreed to all of the independently verifiable facts in this case, including all dates relevant to the Debtors' various filings, the court will give the parties additional time to decide whether they want the record to contain additional evidence. Provisions like sections 507(a)(8) and 523(a)(1) clearly show that Congress favors allowing the government sufficient time to collect taxes. To prevent taxpayers from abusing the bankruptcy process and avoid paying taxes, equity will generally favor the taxing authority in cases like this. *In re Morgan*, 182 F.3d at 780 (citation omitted). However, although a finding of bad faith is not necessary before tolling may be allowed, a factual scenario may exist that favors the debtor. *Id.* Giving the parties additional time to decide if there is evidence favoring their side and allowing them an opportunity to get that evidence into the record will permit the court to make additional factual findings that either side may then use as further

support for their argument why their side should prevail.

Accordingly, it is

ORDERED that on or before sixty days from the date of this order, each party shall inform the court in writing about the necessity of receiving an additional stipulation of facts and or any affidavit(s) into the record and or about conducting an evidentiary hearings and it is further

ORDERED that in the event that neither side informs the court about the necessity of receiving additional evidence into the record or about conducting an evidentiary hearing, the court will reserve on the remaining issue of whether the court will use its section 105(a) power to toll the priority period calculation under section 507(a)(8) in this case.