**In re Ralph Edward DODSON, Nadine Phyllis Dodson, Debtors.**

**Bankruptcy No. 394–36509psh13.**

United States Bankruptcy Court,
D. Oregon.

Feb. 6, 1996.

J. Marvin Benson, Vancouver, WA, for Debtors.

Catherine J. Caballero, Special Assistant U.S. Attorney, Portland, OR, for Claimant.

**OPINION**

POLLY S. HIGDON, Bankruptcy Judge.

The Dodsons have filed an objection to the Internal Revenue Service's proof of claim. The government claims priority status for 1984 income taxes as well as for certain FICA and withholding taxes for 1981, 1982 and 1985. Because the parties have insufficiently identified other issues surrounding the latter taxes the court at this time will address only the status of the income taxes. A tax return for the 1984 income taxes was last due on April 15, 1985. These taxes were assessed on June 17, 1985.

■ The debtors have been in and out of Chapter 13 bankruptcy three times prior to their latest Chapter 13 filing on November 1, 1994.[1] The government claims that it is entitled to priority status for the debtors' 1984 income taxes under the holdings of *In re Brickley,* 70 B.R. 113 (9th Cir. BAP 1986), and *In re West,* 5 F.3d 423 (9th Cir.1993) *cert. denied,* — U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). In *Brickley* after several years the debtors were unable to maintain their Chapter 13 plan payments and in 1984 moved to dismiss the case. Shortly before the dismissal, on October 3, 1984, they filed a Chapter 7 case. The Internal Revenue Service claimed that the debtors' 1979 and 1980 income taxes retained priority status in the Chapter 7 under 11 U.S.C. § 507(a)(7)(A)(i)[2] although the taxes were not, in the second case, "for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition."[3] It pointed out that it had been unable, with the automatic stay in place during the Chapter 13 case, to collect the tax debt.

---

**1.**

| Time | Duration |
|---|---|
| January 16, 1986 to July 11, 1986 | 177 days |
| October 2, 1986 to February 19, 1987 | 141 days |
| January 2, 1990 to August 19, 1994 | 4 years 230 days |

**2.** Now 11 U.S.C. § 507(a)(8)(A)(i). Throughout this opinion the court will refer to the statutory citation applicable at the time the debtors first filed bankruptcy.

**3.** Taxes which have priority status are, in turn, not discharged by the debtor's bankruptcy proceeding. 11 U.S.C. § 523(a)(1). Otherwise the tax debt would have been discharged.

The *Brickley* court commenced its analysis with 11 U.S.C. § 108(c) which, in the event an applicable nonbankruptcy statute of limitations has not run when a bankruptcy petition is filed, allows a claimant, if not permanently enjoined, the longer of the end of such limitations period, including any suspension of the period due to the stay, or 30 days after termination of the stay, to proceed with its claim against the debtor. The court recognized that for collection of federal tax debt the applicable nonbankruptcy statute of limitations is 26 U.S.C. § 6502. It further recognized that 26 U.S.C. § 6503(b) suspends this collection period for the period "the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States ... and for six months thereafter." [4] It concluded: "Since Congress did not intend to allow a taxpayer to escape liability by the expiration of the statute of limitations while his assets are protected by bankruptcy proceedings, we hold that the tax debts in question are not subject to the discharge granted in this case." *Id.* at 115.

The *Brickley* holding was not based on any actual *computation* the court undertook, through application of the time frames established by § 108(c), and § 6503,[5] to the individual facts, but rather was based on a recognition that it would be inconsistent for the Bankruptcy Code, through § 108(c), to protect a creditor from the otherwise adverse consequences of the automatic stay on *pursuit* of its claim, and yet, through literal interpretation of the statutory language of § 507(a)(7), not protect the creditor from the adverse consequences of the stay on the priority *status* of its claim.

In *West* the debtors filed a joint Chapter 13 petition on January 19, 1989, 220 days after the IRS had assessed their 1982, 1983 and 1984 income taxes. The debtors subsequently dismissed this case and filed individual Chapter 13 petitions 58 days later. The Internal Revenue Service contended that the 1982, 1983, and 1984 income taxes were entitled to priority status in the second Chapter 13 cases pursuant to § 507(a)(7)(A)(ii). In holding for the government the Ninth Circuit adopted the reasoning in *Brickley*. In an acknowledged "rare" case, it stated: "Because literal interpretation of § 108(c) would frustrate the Bankruptcy Code's intricate scheme for the payment of tax claims, we do not adopt the debtors' 'plain language' admonitions." *West*, 5 F.3d at 426.

Both parties recognize that the *Brickley* and *West* holdings implicate § 108(c) and, in turn, §§ 6503(b) and (h), in determining the government's entitlement to priority status. They also recognize that as the 1984 taxes were assessed prepetition the tolling period recognized under both §§ 6503(b) and 6503(h) includes up to an additional six months after the time during which the debtors had an open case in bankruptcy court. Where their positions diverge is in their interpretation of the extent of the suspension called for under §§ 6503(b) and (h) under our facts. In this case, unlike in *Brickley, West* or any other reported case of this genre, the debtors filed more than two consecutive bankruptcies on dates which require the court, on a third or later filing, to determine the extent of the "credit" for the maximum six month tolling period arising after a second or later filing. In neither *Brickley* nor *West* was this an issue because in each case there had been only a second filing. Under those facts, whether a full six month tolling period for a previous filing should be "credited" cannot become an issue. Between the first and second filing either the period between filings has been lengthy enough to encompass the period during the first bankruptcy plus six months or it has not. In the latter case the tax debt, if priority in the first case, will remain priority. In the former case, the government will have received full "credit" for the mandated tolling period.

---

4. The *Brickley* court did not mention § 6503(h). Section 6503(h) is specifically applicable to bankruptcy cases and states: "The running of the period of limitations ... on the making of assessments or collection shall, in a case under [the Bankruptcy Code], be suspended for the period during which the [IRS] is prohibited by reason of such case from ... collecting and ... [for] 6 months thereafter."

5. References to §§ 108(c), 507 and 523 refer to sections under the Bankruptcy Code. §§ 6502, 6503 refer to sections under the Internal Revenue Code.

Here, between two of their three previous cases the debtors refiled bankruptcy petitions before the six month suspension period following the previous case dismissals provided for under both § 6503(b) and § 6503(h) had expired. The government believes it is entitled to a full six month "credit" on the tolling period for each of the debtors' three previous bankruptcy filings. The debtors claim the government is entitled to count for that purpose only so much of each six month period that actually passed between each of the filings.

The government's brief assumes, for purposes of determining the total time tolled by § 6503, that the date which is tolled is April 15, 1985. The debtors' brief is unclear on this point. This court has struggled with the question from which date the § 6503 tolling period incorporated into § 507(a)(7)(A)(i) through *Brickley* should be counted. Yet the date from which the tolling period is counted is crucial to the controversy before it. There are several potentially relevant dates from which the tolling period can be counted. The debtors' 1984 tax return was due on April 15, 1985. The court assumes the debtors timely filed their tax return because the government has identified the deadline for assessment of those taxes as April 15, 1988. The taxes were assessed on June 17, 1985. Under the Internal Revenue Code then applicable the assessed taxes were collectible, without bankruptcy, through June 17, 1991. The debtors first filed bankruptcy on January 16, 1986. Therefore, the three year period described in § 507(a)(7)(A)(i) reached back to January 16, 1983. This three year period for their present filing reaches back to November 1, 1991.

The genesis of the court's struggle to identify the correct date from which to count the tolling period is clear. Section 6503 of the Internal Revenue Code and § 507(a)(7)(A) of the Bankruptcy Code were not written to work together. They serve different purposes. If used as intended § 6503 tolls the time of one easily identifiable period, the period of limitations on the making of assessments or collections under the Internal Revenue Code. Section 507(a)(7)(A) identifies the *status* of a priority tax, for purposes of distri-

bution from the bankruptcy estate, by carving out a three year period just prior to the bankruptcy filing date. This statutory language makes no suggestion that this three year reachback period would ever be affected by a subsequent bankruptcy filing. It is a simple calculation, absent the *Brickley* holding, to determine whether a tax falls within that period.

Although under their facts neither court needed to explain the exact method of fusing § 6503 to § 507, *Brickley* and *West* contain guidance on this point. *Brickley* states: "The issue is whether the time the government's collection efforts were stayed by reason of the pending Chapter 13 case should be taken into account *in calculating the reachback period of 11 U.S.C. § 523(a)(1)(A)*." *Brickley*, 70 B.R. at 113. (emphasis added). It concluded: "Section 6503(b) of title 26, applicable to bankruptcy cases via 11 U.S.C. § 108(c), suspended *the collections period set out in Sections 507 and 523* in order to give the IRS the full opportunity contemplated by Congress to collect the delinquent taxes ..." *Brickley*, 70 B.R. at 115 (emphasis added). Both of the quoted statements are somewhat confusing. § 523(a)(1)(A) does not contain the actual three year reachback period. This language appears in § 507(a)(7)(A)(i) which is incorporated in § 523(a)(1)(A). Further, the purpose of neither § 507 nor § 523 was to address the collection of taxes. However, throughout the opinion the court focused on the reasonableness, given a previous bankruptcy filing, of tolling the time encompassed by the three year reachback period of § 507(a)(7)(A)(i). In other words, tolling should impact the bankruptcy statute, not a tax statute.

*West* reinforces this conclusion within the context of the two hundred forty day assessment period of § 507(a)(7)(A)(ii). It concluded "[T]he debtors' joint Chapter 13 case suspended the running of § 507(a)(7)(A)(ii)'s 240–day priority period from the date of the bankruptcy petition until six months after the case was dismissed." *West*, 5 F.3d at 427.

Therefore this court concludes that, in applying the policy represented in these two cases, within the context of § 507(a)(7)(A)(i),

the tolling period recognized in § 6503 should commence from the date, in the first bankruptcy, under given facts, for which a return, if required, is last due, including extensions.

This is the approach taken by the government in its brief. In their three previous cases the debtors were in bankruptcy a total of 5 years, 183 days. Adding this period plus three six-month periods to April 15, 1985 would extend the date for which a return was last due to May 2, 1992. The three year reachback period under § 507(a)(8)(A)(i) for the debtors' latest filing is November 1, 1991. Thus the 1984 taxes, falling within the three year reachback period of § 507(a)(8)(A)(i) for the latest filing, still would be entitled to priority status. In their brief the debtors are unclear from what date the tolling period should commence. This court assumes that their theory would count from April 15, 1985, 5 years, 183 days plus 82 days (the time between filings 1 and 2), 74 days, (the time between filings 3 and 4), and a full six months (after filing 2) to extend the date from which a return, if required, is last due, including extensions, to September 16, 1991. This date would not fall within the three year reachback limit, under their latest bankruptcy filing, of November 1, 1991. Therefore the court must address the ultimate issue between the parties: Whether the government is entitled to an extension of the tolled period for a full six months for each of the debtors' previous bankruptcy filings.

■ In light of the reference in § 6503(b) to "any proceeding" and in § 6503(h) to "such case" it would seem logical to conclude that the government is always entitled to an extension of the tolled period for a full six months for each of a debtors' previous bankruptcy filings.

However, a careful examination of the facts before this court reveals that what the government in fact is asking it to do is to provide them a full six month "credit" for tolling under § 6503 for the period between the debtors' first and second bankruptcy filing.[6] The additional 98 days which would have extended the actual 82 day period between the first and second filing to a full six months, when added to all the other tolling periods under our facts except for a full six month "credit" between the third and fourth filing, would be more than sufficient to toll the April 15, 1985 date into the three year reachback period from November 1, 1994.[7]

This court has determined that the particular circumstance in which the government now finds itself can arise only if, after a debtor's second or subsequent bankruptcy filing and prior to the debtor's refiling, the government fails to collect the tax at issue after it is no longer stayed from its collection efforts for a uninterrupted period which is lengthy enough to include the actual prior days in bankruptcy plus any actual days between filings which are less than six months in length plus an actual six month period which has expired after any filing. If this post-bankruptcy collection period were any shorter, upon a subsequent bankruptcy filing the tolling period clearly authorized by the statute would not have run and the tax would retain its priority status. In fact, because of tolling, the greater either the number or length of the debtor's previous bankruptcy filings the longer the uninterrupted period of time the government is given to collect the

6. The issue now before this court was ripe, although apparently not addressed, at the time the debtors filed their third bankruptcy on January 2, 1990. The government had received its full six month "credit" for tolling purposes for the second filing between the second and third filing. Eighty two days passed between the debtors' first and second filing. The debtors were in bankruptcy 177 days during the first filing and 141 days during the second. Eighty two plus 177 plus 141 plus 180 (assuming six months is equal to 180 days) equals 580 days. Adding 580 days to April 15, 1985 tolls the "date the (1984) return was last due" to December 1, 1986. The § 507(a)(7)(A)(i) three year reachback date for

the January 2, 1990 filing was January 2, 1987. Thus, unless the government had received a six month "credit" for tolling purposes for the period between the first and second filing their claim for 1984 taxes would not have received priority treatment because it did not fall within the three year reachback period for the third filing.

7. 177 days plus 180 days plus 141 days plus 180 days plus 4 years 230 days plus 73 days (actual days between third and fourth filing) equals 2,441 days which tolls the August 15, 1985 date to January 6, 1992.

tax once the debtor is no longer in bankruptcy.

A review of the Congressional purpose in enacting § 108(c) is useful. As noted in *Brickley*, the Senate Report discussing what became § 108(c) states:

> In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for six months thereafter [Section 6503]. The Amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in control or custody of the bankruptcy court. *This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.* 70 B.R. [at] 115, citing S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816, 5817 (emphasis added).

The *West* court recognized that "[t]he sole function of assigning priority to certain tax claims is to enhance the government's ability to collect those claims." *West*, 5 F.3d at 426, fn. 7. The court noted that the statutory six months provided for the suspension of the limitations period on tax collections after restoration of the Service's right to proceed with collection "illustrates a legislative recognition that interruption in collection activity necessitates additional time once the IRS is again free to pursue tax debtors. Although the legislative history [of § 6503] is bereft of reasons for granting the extension, common sense dictates that such a period was given in order *to provide the IRS with sufficient time to restart and refocus its collection efforts once able to do so." West*, 5 F.3d at 427.

█ Legislative history identifies that the purpose of the government's additional six month tolling period after bankruptcy is to provide it adequate time to pursue collection of the tax debt. For collections efforts sufficient time was identified as six months.

However, as this court has pointed out, for purposes of determining the right to priority status under what is now § 507(a)(8)(A)(i) the government will find it necessary to assert a right to a separate six month "credit" for each previous bankruptcy filing only where it has had far more than six months' additional time after a particular bankruptcy to pursue collection of the tax and has failed to do so before the next bankruptcy filing.

The *Brickley* and *West* courts refused to apply the literal language of § 507(a)(7)(A)(i) and (ii) when the result would have allowed the debtor to avoid nondischargeability of the tax by filing successive bankruptcies. They chose, rather, to apply the principle of equity which is reflected in the language of § 108(c) to determine the government's entitlement to priority status. The principle of equity for which these cases stand supports a finding, under our particular facts, that the 1984 income taxes are not entitled to priority status in the debtors' latest bankruptcy case. In this case the government was given a large window of opportunity to collect these taxes. This window was much greater than the language of § 108(c) and § 6503 contemplates. It did not collect the taxes. The equities support a treatment of the tax debt, to the extent not secured through the prepetition assessment, as a general unsecured claim, allowing the debtors to provide a feasible Chapter 13 plan to the court, to complete the plan, and to obtain a discharge and a fresh start.

This opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 7052, they will not be separately stated.

An order consistent herewith shall be entered.