**In re Mark SMITH, Debtor.**

**Mark SMITH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 95–3789.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1996.

Decided Sept. 19, 1996.

William S. O'Brien (argued and briefed), Whitewood, SD, for appellant.

Gary R. Allen, Acting Chief (briefed), Richard Farber, Gary D. Gray, Patricia Bowman (argued), Laurie Snyder, U.S. Dept. of Justice, Appellate Section, Tax Division, Washington, DC, for appellee.

Before: BOGGS and NORRIS, Circuit Judges; and HOOD,* District Judge.

BOGGS, Circuit Judge.

The bankrupt plaintiff, Mark Smith, appeals a grant of summary judgment to his major creditor, the United States of America, in an adversary proceeding for a declaration that his debt to the government is dischargeable in bankruptcy. Holding that Smith's debt was not dischargeable, we affirm.

**I**

Mark Smith filed under Chapter 7 of the Bankruptcy Code on November 23, 1993. At that time, he owed the United States about $140,000 in unpaid income taxes for the years 1987 to 1990. Throughout his bankruptcy, the United States has sought to collect this money from Smith personally. Smith brought this action in bankruptcy court for a determination that his debt to the United States was dischargeable in the bankruptcy proceeding. The bankruptcy court granted summary judgment to the government, and the district court affirmed.

---

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Ken-

The Bankruptcy Code provides for the discharge of pre-petition debts. 11 U.S.C. § 727(b). A debtor is no longer personally liable for discharged debts, which may be settled from the bankruptcy estate, if at all. The Code exempts certain debts from the discharge provision. 11 U.S.C. § 523. Income tax debts are not discharged and the debtor remains personally liable if, *inter alia,* the tax return:

> was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the [bankruptcy] petition....

11 U.S.C. § 523(a)(1)(B)(ii).

It is undisputed that Smith filed his tax returns late. It is also undisputed that the date of Smith's bankruptcy petition is November 23, 1993. The critical issue then is whether he filed the returns after "two years before" that date, a phrase that would conventionally mean November 23, 1991. If he did, he remains liable to the United States despite his bankruptcy.

Smith hired a private courier service to take his tax returns to the Internal Revenue Service. He gave the courier service the returns on Friday, November 22, 1991. The courier delivered the returns to the Internal Revenue Service on Monday, November 25. We note that the interesting timing of Smith's actions appears to be wholly fortuitous, rather than the result of planning by either of the litigants.

Smith now presents two arguments as to why his tax returns were filed at least two years before his November 23, 1993, bankruptcy petition. He first argues that his returns were "filed" when given to the courier on November 22. If one uses the definition of "filed" in the Internal Revenue Code, however, Smith's position is incorrect. Generally, a tax return is "filed" on the date that it is received by the United States. *Surowka v. United States,* 909 F.2d 148, 149 (6th Cir.1990) (citing *Miller v. United States,* 784 F.2d 728, 731 (6th Cir.1986)). A familiar

tucky, sitting by designation.

exception to that rule applies to tax returns mailed with the United States Postal Service, which are considered "received" by the United States (and therefore "filed") on the date of the postmark. *Surowka,* 909 F.2d at 149. However, the "mailbox rule" does not apply to Smith's returns because he sent them by private courier service. *See Redman v. Commissioner,* 820 F.2d 209, 212 (6th Cir. 1987). Furthermore, the "mailbox rule" only applies to the initial determination of whether a return is timely filed. *Emmons v. Commissioner,* 898 F.2d 50, 51 (5th Cir.1990) ("§ 7502 establishes that timely filings are delivered and, thus, filed on the postmark date but late filings are not considered delivered or filed until they are received by the IRS"). It is undisputed that Smith's returns were filed late—and the "mailbox rule" is therefore irrelevant to determining the exact date of filing.

We have been rather consistent in denying "equitable" pleas to disregard the strict timing rules of the Tax and Bankruptcy Codes. *E.g., Miller,* 784 F.2d at 731 (rejecting argument that statutory provision of one "mailbox" rule for the United States mails does not preclude judicial creation of a similar rule for private courier services). Because a contrary holding is foreclosed by precedent and statute, we disagree with Smith and affirm the district court's holding that his tax returns were "filed" when received by the IRS on November 25.

■ Prepared for a holding that his return was filed on November 25, Smith has an alternative argument about how the two-year period between the petition date and the filing date should be calculated. November 23, 1991, it turns out, was a Saturday. Smith says that the Bankruptcy Code generally allows debtors to file documents due on weekends the following Monday. He cites Fed.R.Bankr.P. 9006:

(A) Computation. In computing any period of time prescribed or allowed by . . . any applicable statute, the day of the . . . event, . . . from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday [or] a Sunday . . . in which event

the period runs until the end of the next [weekday].

Smith argues that, counting backwards from the filing date, the "last" day is a Saturday, and that the two-year period should not begin until the following Monday, November 25.

We do not believe that Rule 9006 can be put to the purpose Smith proposes. The Rule contemplates a deadline given to a party to take some action. The period "runs" forward from the occurrence of some event until the expiration of the time limit, or the next business day thereafter. The reason for the rule is to encourage courts to read the Code's sometimes draconian catalogue of time limits in a manner that is fair to the party against whom the time limit is running, *i.e.,* to guarantee that no party is short-changed by a unfortunately-positioned weekend or holiday.

What Smith asks us to do with Rule 9006 is quite different. Here we are not dealing with bankruptcy procedural rules but with the legal status of a debt at the time of the filing of the petition. There is no claim that Smith did not have adequate time to accomplish something. In fact, Smith's problem arises only because he filed for bankruptcy *too early.* (Had he waited a few more days, the United States would have to line up with his other creditors for a piece of the estate.) The choice of a petition date was entirely within Smith's control. No holiday or weekend stopped him from waiting a few days more. Since Smith cannot make a claim that a literal calculation of dates would unfairly cut short the time he had to take action, his use of the rule fails. Indeed, as we discuss below, Smith's argument would cut short the *government's* two-year period to collect outstanding taxes before it loses the special status of non-dischargeability of its tax debts.

As a general matter, we believe that Rule 9006 should apply only to periods calculated by counting forward from the occurrence of some event. The Third Circuit disagrees, and has used Rule 9006 to extend backwards the amount of time within which pre-petition transfers can be considered "preferential." *In re Nelson Co.,* 959 F.2d 1260, 1266 (3rd Cir.1992) (the preference provision relates to

transfers within 90 days of the date of filing, and if the 90th day is a weekend or holiday, the 90–day period is to be extended backward to the next working day). We think this construction of Rule 9006 at odds with its text. The rule speaks of time "running," and time does not run backwards. In addition, the time periods contemplated by Rule 9006 are times within which a party or court should *do* something. In this case, the two-year period is a time within which the potential bankrupt must *not do* something, *i.e.*, not file for bankruptcy lest certain of his debts be non-dischargeable.

Moreover, even if we were to use Rule 9006 to count backwards from the date of Smith's petition, it would make little sense to count backwards two years and then, upon reaching November 23, 1991, reverse directions and count forward to the next business day, as Smith suggests we do. Were we to begin counting backwards and find ourselves on a Saturday, we would keep going backwards, extending the period to Friday, rather than shortening it to Monday. *See Nelson*, 959 F.2d at 1266 (doing exactly that). One must not forget that Rule 9006 is intended to benefit the party *against* whom a period is running. In this case, that party is the government, not Smith. For these reasons, the district court correctly held that Rule 9006 did not apply.

## II

This is a case where one of the parties gets a lucky break. Had Smith filed for bankruptcy two days later, he would now owe no taxes. He filed when he filed, and therefore he does. The result strikes one as arbitrary, and it is arbitrary in the sense that two years is just an arbitrary number chosen to set a line somewhere in the proximity of reasonableness. Smith was not waiting cagily for the two-year period to pass, only to be snared by an erroneous computation. On the other hand, the government was not in fact waiting to pounce, confident that its two-year window was still open. Nevertheless, the government was *entitled* to a full two-year period, and the result we reach guarantees that it has that time. We have recently held that the Bankruptcy Code should be read in

a "straightforward" manner. *Bartlik v. United States Dept. of Labor*, 62 F.3d 163, 167 (6th Cir.1995). In that spirit, the judgment of the district court is AFFIRMED.