In re Francis V. NOLAN, Jr., Debtor.

Francis V. NOLAN, Jr., Plaintiff,

v.

**UNITED STATES of America INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 95–05708–KL3–7.
Adv. No. 96–0092A.

United States Bankruptcy Court,
M.D. Tennessee.

Feb. 20, 1997.

Isham B. Bradley, Brentwood, TN, for Debtor.

Martha J. Weber, Special Assistant United States Attorney, Nashville, TN, for Defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether the three year "look back" for the nondischargeability of taxes under 11 U.S.C. § 523(a)(1)(A)[1] (incorporating 11 U.S.C. § 507(a)(8)(A)(i)[2]) is presumed or supplied by this debtor's prior bankruptcy case during the three year period. It is not. To prepare the government's equitable arguments for trial, it is also determined that federal income taxes for 1986 were a prepetition claim in the bankruptcy case filed by this debtor on February 9, 1987. The following are findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### I.

Francis V. Nolan, Jr. filed his first Chapter 7 petition on February 9, 1987. Nolan's 1986 tax return was due April 15, 1987. Nolan received an extension and eventually filed his 1986 tax return on October 19, 1989. The IRS made an assessment on December 4, 1989.[3] On May 25, 1993, Nolan received a

---

1. 11 U.S.C. § 523(a)(1)(A) provides:
   (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
   (1) for a tax or a customs duty—
   (A) of the kind and for the periods specified in section ... 507(a)(8) of this title....

2. 11 U.S.C. § 507(a)(8) was renumbered from 11 U.S.C. § 507(a)(7) by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 304(c), 108 Stat. 4150 (Oct. 22, 1994). No substantive change was made in 1994. Although some of the cases cited below pre-date the 1994 amendments and use the prior numbering, all cites have been conformed to the new numbering. 11 U.S.C. § 507(a)(8)(A)(i) provides:
   (a) The following expenses and claims have priority in the following order:
   (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
   (A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

3. At oral argument in this adversary proceeding, counsel for the IRS conceded that the December 4, 1989 assessment was a technical violation of the automatic stay under the Bankruptcy Code in effect in 1989. *But see* 11 U.S.C. § 362(b)(9)(D) (as amended by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 116, 108 Stat. 4150 (Oct. 22, 1994)). The IRS defended that it had no notice of bankruptcy at its 1989 assessment. Debtor's current counsel thought the IRS had notice in the prior bankruptcy case. The main file for the debtor's first case, made an exhibit on these cross-motions for summary judgment, reveals that the IRS was not listed as a creditor and was not included on the mailing matrix in the first bankruptcy case.

discharge.[4]

On August 18, 1995, Nolan filed his second Chapter 7 petition. In this adversary proceeding, Nolan argues for summary judgment that his federal income taxes for 1986 are dischargeable because 1986 taxes are now outside the three year "look back" in 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i). The government moved for summary judgment that the three year look back is tolled or extended by 11 U.S.C. § 108(c)[5] for the period (and then some) during which Nolan was a debtor in the prior bankruptcy case or is enlarged by "equitable tolling" under 11 U.S.C. § 105(a).[6]

## II.

This complicated interaction between bankruptcy and tax law is now well worn by reported opinions. Two schools of thought have emerged:

1. A majority, including courts of appeals in the Third[7], Seventh[8], Ninth[9] and Tenth[10] Circuits toll or enlarge the time periods for the nondischargeability of taxes in § 507(a)(8)(A) based on a prior bankruptcy. Among these courts there are two theories— some rely on the extension of time provisions in § 108(c) of the Bankruptcy Code[11]; others invoke the equitable powers of bankruptcy courts under § 105(a).[12]

2. A minority of courts led by Bankruptcy Judge Benjamin Cohen in the Northern District of Alabama hold that the time periods in § 507(a)(8)(A) are statutory elements of the cause of action in § 523(a)(1) and are not automatically enlarged or tolled by a prior bankruptcy case.[13] These courts recognize that equitable principles may supply or raise a presumption with respect to a timeliness element of the government's cause of action under § 523(a)(1), but only upon proof of debtor misconduct or abuse.

■ For the many reasons discussed by Judge Cohen in *In re Turner*, 182 B.R. 317

---

4. There is disagreement why entry of discharge was delayed in the debtor's first case. Counsel for the debtor claims the delay was due to the filing of complaints objecting to discharge and dischargeability. The IRS suggests that the delay was caused by things the debtor did or failed to do during the first case. This factual dispute is relevant only to the government's equitable arguments and is reserved for trial for the reasons discussed below.

5. 11 U.S.C. § 108(c) provides:

(c) [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362 ... with respect to such claim.

6. 11 U.S.C. § 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination neces-

sary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

7. *In re Taylor*, 81 F.3d 20 (3d Cir.1996).

8. *Montoya v. United States (In re Montoya)*, 965 F.2d 554 (7th Cir.1992).

9. *West v. United States (In re West)*, 5 F.3d 423 (9th Cir.1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). *See Brickley v. United States (In re Brickley)*, 70 B.R. 113 (B.A.P. 9th Cir.1986).

10. *United States v. Richards (In re Richards)*, 994 F.2d 763 (10th Cir.1993).

11. *See, e.g., In re West*, 5 F.3d at 426–27; *In re Taylor*, 81 F.3d at 22–24; *In re Montoya*, 965 F.2d at 557–58.

12. *See, e.g., In re Richards*, 994 F.2d at 765–66.

13. *See Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993); *In re Pastula*, 203 B.R. 941 (Bankr.E.D.Mich.1997); *Turner v. United States (In re Turner)*, 182 B.R. 317 (Bankr. N.D.Ala.1995), *adhered to on reconsideration*, 195 B.R. 476 (Bankr.N.D.Ala.1996); *In re Macko*, 193 B.R. 72 (Bankr.M.D.Fla.1996); *Clark v. Internal Revenue Serv. (In re Clark)*, 184 B.R. 728 (Bankr.N.D.Tex.1995); *Gore v. United States (In re Gore)*, 182 B.R. 293 (Bankr.N.D.Ala.1995); *Saunders v. United States (In re Saunders)*, No.

888

(Bankr.N.D.Ala.1995), *adhered to on reconsideration,* 195 B.R. 476 (Bankr.N.D.Ala. 1996), and *In re Gore,* 182 B.R. 293 (Bankr. N.D.Ala.1995), and by Judge Graves in *In re Pastula,* 203 B.R. 941 (Bankr.E.D.Mich. 1997), the three year look back for nondischargeability of taxes in § 507(a)(8)(A)(i) is not tolled or extended merely because the debtor had a prior bankruptcy case during that three year period. The arguments are summarized below.

### A.

■■■ The three year look back in § 507(a)(8)(A)(i) is a substantive element of the government's cause of action under § 523(a)(1)(A), not a statute of limitations.[14] Ordinary principles of "equitable tolling" employed by many of the reported decisions are not applicable.[15] This element of the government's cause of action can be supplied by a court applying equitable principles only upon proof of substantial debtor misconduct.[16] The courts that have allowed "equitable tolling" without proof of debtor misconduct have

mistaken the three year look back for a statute of limitations. If this debtor committed wrongful acts justifying the equitable relief sought by the IRS, 11 U.S.C. § 105 provides a remedy.[17] Nothing in § 105 provides that remedy based only on a permitted bankruptcy filing[18] during the three year period in § 507(a)(8)(A)(i).

### B.

Sections 523(a)(1)(A) and 507(a)(8)(A)(i) are not ambiguous. Resort to legislative history to support exceptions to or extensions of the three year look back is not appropriate. These fundamental bankruptcy tax provisions are the result of "'a series of carefully crafted compromises.'" *In re Turner,* 195 B.R. at 486 (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 748 n. 14, 109 S.Ct. 2166, 2177 n. 14, 104 L.Ed.2d 811 (1989)). Enlargement or tolling of the three years based on legislative history is not indicated because the statute as written leads to no absurd results.[19]

94–23489–BKR–RBR, 1995 WL 865471 (Bankr. S.D.Fla. Dec. 26, 1995).

**14.** A statute of limitations fixes the "maximum time periods during which certain actions can be brought or rights enforced. After the time periods set out in the applicable statute of limitations has run, no legal action can be brought regardless of whether any cause of action ever existed." BLACK'S LAW DICTIONARY 927 (6th ed.1990). The three year "look back" is not a statute of limitations—it is part of the definition of the taxes that are nondischargeable in a bankruptcy case. *See Smith v. United States (In re Smith),* 96 F.3d 800, 802 (6th Cir.1996) (two year period for nondischargeability of taxes under § 523(a)(1)(B)(ii) is not a procedural rule but is part of the "legal status" of the government's claim).

**15.** Equitable tolling and equitable estoppel apply to a statute of limitations to determine when it begins to run and when a defendant is barred from asserting the defense of a statute of limitations. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 27, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989) (running of a statute of limitations "is traditionally subject to equitable tolling."). However, "equitable tolling or equitable estoppel can never be asserted to create a right nor to give a cause of action, but rather it serves only to prevent loss otherwise inescapable and to preserve rights already acquired.... Estoppel operates always as a shield and never as a sword." *Chattanooga v. Louisville & Nashville R.R. Co.,* 298 F.Supp. 1, 9 (E.D.Tenn.1969), *aff'd,* 427 F.2d

1154 (6th Cir.), *cert. denied,* 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970).

**16.** *See, e.g., Welsh v. United States,* 844 F.2d 1239 (6th Cir.1988) (equity may supply rebuttable presumption that element of cause of action exists where defendant negligently destroyed evidence foreseeably pertinent to litigation).

**17.** Section 105 of the Bankruptcy Code confirms the bankruptcy court's equitable powers. A debtor might commit fraud or abuse the bankruptcy process sufficient to inspire a bankruptcy court to use § 105 to presume or supply the three year element in § 507(a)(8)(A)(i). In support of its motion for summary judgment, the IRS has not attempted to prove fraud, abuse of the bankruptcy system, or any scheme to manipulate bankruptcy filings to defeat its claims— except to argue that this debtor had a prior bankruptcy case.

**18.** No claim is made that Nolan was ineligible to file either bankruptcy, nor is it disputed that Nolan is now eligible for a second discharge in bankruptcy. *See* 11 U.S.C. § 727(a)(8).

**19.** This is not one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters. Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

## C.

██ 11 U.S.C. § 108(c) is not applicable by its own terms to this action under § 523(a)(1). Section 108(c) affects the expiration of some time periods under applicable "nonbankruptcy law." 11 U.S.C. § 523(a)(1) is not "nonbankruptcy law."[20] The three year look back in § 507(a)(8)(A)(i) is not extended or tolled by § 108(c). That provisions of the Internal Revenue Code such as 26 U.S.C. § 6503[21] may be extended by 11 U.S.C. § 108(c)[22] says nothing about the dischargeability in bankruptcy of taxes that have aged beyond the three years in § 523(a)(1) and § 507(a)(8)(A)(i).[23]

## D.

██ 11 U.S.C. § 523(b)[24] is unambiguous proof that Congress contemplated and empowered debtors to discharge taxes in successive bankruptcy cases. Notwithstanding the ruminations in some reported decisions,[25] it is not plausible that Congress overlooked its own logic in *Gurney v. Arizona Dep't of Revenue (In re Gurney)*, 192 B.R. 529 (B.A.P. 9th Cir.1996). At the time, Arizona law fixed no time limitation on the collection of state excise taxes, thus Arizona law had no provision tolling that nonexistent limitation. Absent a tolling provision under state law to be grafted onto the counting periods in § 507(a)(8)(A) via § 108(c), the BAP's prior decision in *Brickley* (and the adoption of *Brickley* by the Ninth Circuit in *West*) provided no basis for tolling or extending the time requirements for the nondischargeability of Arizona state taxes based on the pendency of a prior bankruptcy case. In other words, because the State of Arizona had the strongest possible tax collection system—one with no limit on the time within which the state could collect taxes—the tolling by "incorporation" of nonbankruptcy law into § 507(a) via (misuse of) § 108(c) was not available. Ironically, *West* and *Brickley* would only protect the priority and nondischargeability of taxes from jurisdictions with less rigorous tax collection systems. To resolve this problem, the Ninth Circuit BAP reached into the bag of equity and found "equitable tolling" principles in § 105. A cynic might say that logical deficiencies in the use of § 108(c) in *Brickley* emerged in *Gurney* and inspired the BAP to fill the gap with equity under § 105(a).

---

**20.** We know that "applicable nonbankruptcy law" in 11 U.S.C. § 108(c) means state law or federal law other than the Bankruptcy Code. *See In re Quenzer*, 19 F.3d at 165 ("Under the plain language of section 108(c), ... that suspension applies only to nonbankruptcy law and nonbankruptcy proceedings. Absent some other basis for tolling the section 507 time limit, the Quenzers' tax liability ... must be discharged."). *See also Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (interpreting the identical phrase in 11 U.S.C. § 541(c)(2)); *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 297 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995) ("applicable nonbankruptcy law" in 11 U.S.C. § 108(c) means "other federal or state law"); *Aslanidis v. United States Lines*, 7 F.3d 1067, 1073 (2d Cir.1993) ("§ 108(c)(1) refers to only 'special suspensions' that are found in nonbankruptcy provisions such as the Internal Revenue Code.").

**21.** 26 U.S.C. § 6503(h) provides:

The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—
(1) for assessment, 60 days thereafter, and
(2) for collection, 6 months thereafter.

**22.** The interaction of 11 U.S.C. § 108(c) and 26 U.S.C. § 6503 retains importance in bankruptcy though not because of any imagined affect on the dischargeability of taxes. For example, a debtor who tries and fails in a Chapter 13 case does not escape the assessment or collection of taxes upon dismissal because 11 U.S.C. § 108(c) and 26 U.S.C. § 6503 extend the assessment and collection rights of the government.

**23.** Forced application of § 108(c) in this context leads to awkward outcomes that confess the defects in this approach. For example, the Bankruptcy Appellate Panel for the Ninth Circuit's opinion in *Brickley*, is often cited as the seminal decision applying § 108(c) to extend the time periods for nondischargeability under § 523(a)(1) and § 507(a)(8). Ten years after *Brickley*, the Ninth Circuit BAP was confounded

**24.** 11 U.S.C. § 523(b) provides:

Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

**25.** *See In re Richards*, 994 F.2d at 765; *In re Gurney*, 192 B.R. at 535 & 539; *In re Davidson*, 120 B.R. 777, 780–81, 783–84 (Bankr.D.N.J. 1990); *Molina v. United States (In re Molina)*, 99 B.R. 792 (S.D.Ohio 1988).

the possibility that debtors would file successive bankruptcy cases in which the automatic stay would interrupt the collection efforts of the IRS. Section 523(b) states that non-fraud taxes [26] declared nondischargeable in a prior bankruptcy case can be discharged in a subsequent bankruptcy case. Section 523(b) necessarily contemplates more than one bankruptcy case and more than one automatic stay.

Section 523(b) is part of the complex balance of interests in the tax provisions of the Bankruptcy Code.[27] The cross-reference in § 523(b) to § 523(a)(1) incorporates the cross-reference in § 523(a)(1) to § 507(a)(8)(A)(i). Put another way, the three year characteristic of a nondischargeable tax claim under § 523(a)(1) is directly implicated in § 523(b) analysis—when a taxpayer files successive bankruptcy cases, the three year look back is an element the government must prove to establish the nondischargeability of taxes in the last filed case. Courts that have been quick to find "equitable" exceptions to the counting of the three year look back in § 507(a)(8)(A)(i) have not addressed the conflict this creates with the logic and plain language of § 523(b).

If Congress intended to except the duration of a prior bankruptcy case from the three year period in § 507(a)(8)(A)(i) and yet to allow the discharge of (non-fraud) taxes in a subsequent bankruptcy case based on the passage of time—a clear legislative statement of this intent would be found somewhere in §§ 523(b), 523(a)(1) or 507(a)(8)(A)(i). The government's position that a bankruptcy filing during the three year period defeats § 523(b) without regard to taxpayer fraud or misconduct is materially inconsistent with the statutory scheme that the passage of time changes nondischargeable (non-fraud) taxes into dischargeable claims in successive bankruptcy cases.

### E.

■ 11 U.S.C. § 507(a)(8)(A)(i) specifically states the circumstances under which the three year look back is tolled or extended; it is inappropriate for courts to read a different extension provision into a statute that already contains an extension rule. The three year period in § 507(a)(8)(A)(i) is counted from the "last due date ... including extension." This debtor received an extension of the due date for his 1986 tax return in 1987. The three year counting for priority and nondischargeability was accordingly shifted in time by the statute itself. If Congress also intended to automatically suspend the three year look back for any period during which the taxpayer was a debtor in a prior bankruptcy case it would have said so.

### F.

The immediately adjoining subsection of the Bankruptcy Code—§ 507(a)(8)(A)(ii) [28]— also contains a special statutory rule for the counting of the 240 day period in that section. The 240–days in § 507(a)(8)(A)(ii) are suspended for any period during which "an offer in compromise" is pending between the taxpayer and the IRS. The proximity of this specific counting rule demonstrates again that Congress focused on the need for some extensions and tolling of the time periods in § 507(a)(8). The precision with which Congress crafted the balance between the dischargeability of taxes and the collection

---

**26.** 11 U.S.C. § 523(b) deals only with the dischargeability of non-fraud claims in successive bankruptcy cases. The mere passage of time does not permit the discharge of claims declared nondischargeable in a prior bankruptcy if fraud was the underlying basis for exception to discharge.

**27.** Section 523(b) was added to bankruptcy law in 1978. Under prior law, even non-fraud taxes declared nondischargeable in a bankruptcy case remained nondischargeable in a subsequent case under principles of res judicata. *See* Bankruptcy Act § 17b, 11 U.S.C. § 35b (repealed).

**28.** 11 U.S.C. § 507(a)(8)(A)(ii) provides:

(a) The following expenses and claims have priority in the following order:
(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition.

needs of the government in § 507(a)(8)(A)(i) and (ii) argues strongly against judicial tinkering with the counting rules in these subsections.

### G.

There is evidence elsewhere in § 523 that Congress knows how to build precise extension provisions into the definitions of nondischargeable claims that include time periods. In 11 U.S.C. § 523(a)(8) Congress declared nondischargeable student loans that were first due within seven years before a bankruptcy filing. Excluded by law from the counting of this seven year period is any "suspension of the repayment period." 11 U.S.C. § 523(a)(8)(A). *See also* 42 U.S.C. § 292f(g) (HEAL loans). The courts have recognized that the broad suspension language in § 523(a)(8)(A) extends or tolls the seven year period for time spent by the borrower in a prior bankruptcy case.[29]

There is no analog to the broad extension provision in § 523(a)(8)(A) in § 523(a)(1) or in § 507(a)(8)(A)(i). Instead there is only the narrow expansion of the three years in § 507(a)(8)(A)(i) to reflect extensions granted by the IRS for the filing of tax returns.

With ample evidence that Congress knows how to design both broad and narrow rules for the counting of time periods in the exceptions to discharge in bankruptcy, it is not for the judiciary to embrace a broad rule where Congress has enacted a narrow one.

### H.

■ "Fears" of debtor abuse of the IRS and manipulation of bankruptcy filings to avoid the nondischargeability of taxes are resolved by other provisions of the Bankruptcy Code. For example, 11 U.S.C. § 349[30] permits a bankruptcy court to insulate taxes from discharge at dismissal of a bankruptcy case if it appears that the debtor is serially filing and dismissing to manipulate the dischargeability of taxes.[31] The bankruptcy court can grant the IRS relief from the stay for cause under § 362(d)(1) where the passage of time in a bankruptcy case will inappropriately defeat the collection rights of the government.

Diligence by the IRS or a state tax collector is relevant. Did the IRS seek relief from the stay in the prior bankruptcy case? Did the IRS ask for a condition on dismissal in the prior bankruptcy case? How much collection time did the IRS have between or during prior bankruptcy cases?[32] That the facts matter is another way of saying that equitable principles are not applied automatically just because a prior bankruptcy case was pending during the three year period in § 507(a)(8)(A)(i).

### III.

The Supreme Court recently instructed the bankruptcy courts to refuse equitable arguments that change the priorities of debts fixed by Congress in the Bankruptcy Code. In *United States v. Noland,*[33] —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996), the Supreme Court held that a bankruptcy court may not invoke equity to subordinate tax penalty claims in a manner that changes the statutory priorities in § 507.

---

**29.** *See Virginia v. Gibson (In re Gibson),* 184 B.R. 716 (E.D.Va.1995) ("applicable suspension" in § 523(a)(8) should be construed broadly enough to include any interruption in the payment schedule), *aff'd mem.,* 86 F.3d 1150 (4th Cir. 1996); *Williams v. United States (In re Williams),* 195 B.R. 644 (Bankr.N.D.Tex.1996); *Saburah v. United States Dep't of Educ. (In re Saburah),* 136 B.R. 246 (Bankr.C.D.Cal.1992).

**30.** 11 U.S.C. § 349(a) provides:

(a) *Unless the court, for cause, orders otherwise,* the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title. (emphasis added).

**31.** *See In re Frieouf,* 938 F.2d 1099 (10th Cir. 1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992).

**32.** *See, e.g., In re Dodson,* 191 B.R. 869 (Bankr. D.Or.1996) ("large window of opportunity to collect taxes" unhindered by bankruptcy stays interrupts equitable tolling analysis in *Brickley* and *West* ).

**33.** Not the same *Noland.*

Section 507(a)(8) is part of the debt priority scheme at issue in *Noland*. Section 507(a)(8) becomes involved in this nondischargeability dispute only because of the cross-reference in § 523(a)(1)—in its ordinary life, § 507(a)(8) deals with the priority of debts for many important reasons, including the order in which bankruptcy estates are distributed to creditors.

Equitable tolling or extension of the three years in § 507(a)(8)(A)(i) as argued by the IRS has exactly the effect rejected by the Supreme Court in *Noland*—it would alter the extent of the government's statutory priority for taxes based on an equitable principle whenever a debtor had a prior bankruptcy case during the three year period.

## IV.

Sixth Circuit precedent weighs against the government's position that a prior bankruptcy supplies the three year element in § 507(a)(8)(A)(i). In *Smith v. United States (In re Smith)*, 96 F.3d 800 (6th Cir.1996), the Sixth Circuit refused to apply Bankruptcy Rule 9006 to extend the two year period for the nondischargeability of taxes in § 523(a)(1)(B)(ii).[34] The court observed "we have been rather consistent in denying 'equitable' pleas to disregard the strict timing rules of the Tax and Bankruptcy Codes." *Id.* at 802. The Sixth Circuit acknowledged the important distinction between ordinary procedural rules for counting time periods and the substantive provisions of the Bankruptcy Code that define nondischargeable tax claims: "Here, we are not dealing with bankruptcy procedural rules but with the legal status of a debt at the time of the filing of the petition." *Id.*

At issue in *Smith*, was § 523(a)(1)(B)(ii) which renders nondischargeable any income tax with respect to which a late return was filed within two years before a bankruptcy petition. Smith gave a courier his (overdue) income tax returns on Friday, November 22,

1991. The courier delivered the returns to the IRS on Monday, November 25, 1991. Smith filed bankruptcy on November 23, 1993. Smith argued that the counting provisions of the Bankruptcy Rules moved the filing of his tax returns outside of the two years in § 523(a)(1)(B)(ii).

The Sixth Circuit refused to allow procedural rules to change the nondischargeable status of the IRS's claim at the petition. If Smith "filed for bankruptcy two days later, he would not now owe taxes.... The result strikes one as arbitrary and it is arbitrary in the sense that two years is just an arbitrary number chosen to set a line somewhere in the proximity of reasonableness.... [T]he Bankruptcy Code should be read in a 'straightforward' manner." *Smith*, 96 F.3d at 803. A "straightforward" reading of §§ 523(a)(1)(A) and 507(a)(8)(A)(i) does not find the counting rule argued here by the IRS.

In *United States v. Aberl (In re Aberl)*, 78 F.3d 241 (6th Cir.1996), the Sixth Circuit recognized that Congress knows how to protect the IRS from debtor "tactics" that allow the time periods for priority and nondischargeability to run under § 507 of the Bankruptcy Code. The taxpayer in *Aberl* made an offer in compromise to the IRS *before* the IRS formally assessed taxes. The IRS then assessed taxes and the taxpayer filed a Chapter 7 petition more than 240 days after that assessment. Because of the age of the taxes (1981 and 1983 taxes in a bankruptcy filed in 1991), the IRS's only argument for priority and nondischargeability was 11 U.S.C. § 507(a)(8)(A)(ii)—that the taxes had been "assessed within 240 days [of the bankruptcy petition], plus any time plus 30 days during which an offer in compromise with respect to such taxes that was made within 240 days after such assessment was pending, before the date of the filing of the petition."

As explained by the Sixth Circuit, the special "tolling" provision in § 507(a)(8)(A)(ii)

**34.** 11 U.S.C. § 523(a)(1)(B)(ii) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(1) for a tax or a customs duty—

(B) with respect to which a return, if required—
(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition.

was crafted by Congress to stop manipulation of the 240–day period for priority and nondischargeability:

A review of section 507's legislative history reveals Congress' concern that debtors might use an offer in compromise to delay negotiations with the IRS, following the IRS's formal assessment of unpaid taxes, until the debtors' tax liability loses priority status. The statute was therefore enacted to give the IRS 240 days to collect the taxes that are due following its formal assessment of unpaid taxes. Indeed, section 507 attempts to balance two competing interests: the debtor's interest in obtaining a fresh start free from creditors' claims; and, the IRS's interest in collecting unpaid taxes.

*Aberl*, 78 F.3d at 244.

Construing the statute literally and strictly, the Sixth Circuit held that the debtor's offer in compromise *before* assessment did not toll the 240–day period in § 507(a)(8)(A)(ii)—only an offer in compromise *after* assessment has that effect. The Sixth Circuit refused the IRS's plea to reform § 507(a)(8)(A)(ii): "[Section] 507(a)[ (8) ](A)(ii) provides a distinction between pre-assessment and post-assessment offers in compromise submitted to the IRS, . . . courts may not reform statutes to correct perceived inadequacies." *Aberl*, 78 F.3d at 244.

■ *Aberl* is instructive here for two reasons. First, the Sixth Circuit recognized that Congress knows how to build into a bankruptcy tax statute a tolling provision that protects the public fisc from the running of the time periods for priority and nondischargeability. Congress wrote a specific provision into § 507(a)(8)(A)(ii) changing the counting of the 240 day period to accommodate the government's consideration of a debtor's offer in compromise. The preceding

subsection at issue here—§ 507(a)(8)(A)(i)—excludes from its three year period any extension of time granted by the IRS for the filing of a tax return. The new exclusion the IRS would have this court write into § 507(a)(8)(A)(i)—that a prior bankruptcy tolls, extends or supplies the three year element of the government's case—is precisely the sort of statutory reformation refused by the Sixth Circuit in *Aberl*.[35]

Secondly, *Aberl* and *Smith* demonstrate the Sixth Circuit's respect for the deliberate legislative balances in the Bankruptcy Code sections dealing with the dischargeability of taxes. Constructions that enlarge nondischargeability at the expense of the fresh start require clear statutory support. There is no clear statutory support for presuming or supplying the three year look back in § 507(a)(8)(A)(i) based alone on a prior bankruptcy case. Without evidence of debtor misconduct or scheme to avoid taxes, it is unlikely that the Sixth Circuit would depart from the logic of *Aberl* and *Smith* to declare a broad new exception to the rule that taxes can be discharged in successive bankruptcy cases under § 523(b).

## V.

■ The IRS is entitled to a trial of its contention that the three year element in § 507(a)(8)(A)(i) should be supplied by the court in this adversary proceeding. This argument from equitable principles cannot be resolve on summary judgment.

It may be relevant to the government's equitable argument whether the debtor's tax liability for 1986 was a pre- or postpetition claim in the 1987 bankruptcy.[36]

■ The debtor's 1986 tax liability was a prepetition debt in the bankruptcy case filed on February 9, 1987. Debt means liability on a claim. 11 U.S.C. § 101(12).

---

**35.** The filing of a bankruptcy petition differs from an offer in compromise—an offer in compromise does not automatically stop IRS collection efforts; a bankruptcy petition stays most collection activity. If any inference can be drawn from this difference it is that Congress made the policy choice to treat a prior bankruptcy differently than an offer in compromise for purposes of counting the time periods in

§ 507(a)(8). This construction is not clearly absurd and does not trigger judicial reformation of § 507(a)(8)(A)(i).

**36.** For example, the affect of the automatic stay on IRS collection efforts during the 1987 bankruptcy may differ with characterization of the claim.

*See Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). Claim means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). Congress intended by this language to adopt "the broadest available definition of 'claim.' " *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991).

For purposes of priority (and nondischargeability) of taxes, "claim" includes unmatured and unliquidated rights to payment for "a taxable year ending on or before the date of the filing of the petition...." 11 U.S.C. § 507(a)(8)(A)(i). *See Raiman v. State Bd. of Equalization (In re Raiman),* 172 B.R. 933, 940 (9th Cir. BAP 1994) ("taxable year" fixes reference point for taxes entitled to priority).

This debtor's 1986 tax year ended on December 31, 1986, before the first bankruptcy petition. Because "claim" includes unmatured and unliquidated rights to payment, it is not outcome determinative that the debtor's 1986 tax return was not yet due at the petition on February 9, 1987. Hypothetical transactions after the petition but before April 15, 1987 that could affect the amount of tax owed could not defeat the existence of a claim for 1986 taxes at the petition.

*United States v. Chavis (In re Chavis),* 47 F.3d 818 (6th Cir.1995), is not contrary. *Chavis* holds that untimely filed tax claims are disallowed in a Chapter 13 case. The petition in *Chavis* was filed on May 23, 1991. In a note, the Sixth Circuit said this about tax claims for the 1991 tax year:

> Because the 1991 tax liability was not due until 1992, the 1991 tax liability is a non-dischargeable post-petition debt (pursuant to 11 U.S.C. §§ 1305(a)(1) and 1328(a)) and is not at issue.

*Chavis,* 47 F.3d at 819 n. 4.[37]

These parties concede that 1987 taxes were post-petition claims under *Chavis* in

Nolan's 1987 bankruptcy. However, *Chavis* did not address the status of tax claims for the prior calendar year when a bankruptcy petition is filed in the "gap" after December 31st and before April 15th. For such claims, the taxable year has ended (for most debtors), the government's right to payment has accrued; all that awaits the passage of time is the filing of returns. Taxes for 1986 were prepetition claims in this debtor's 1987 bankruptcy case.

An appropriate order will be entered.

### ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that the three year look back element of the government's cause of action under 11 U.S.C. § 523(a)(1)(A) and 11 U.S.C. § 507(a)(8)(A)(i) is not tolled, extended, presumed or supplied as a matter of law by this debtor's prior bankruptcy case. IT IS FURTHER ORDERED that the government's equitable arguments cannot be resolved on summary judgment and will be set for trial by a separate order. IT IS FURTHER ORDERED that the debtor's federal income taxes for 1986 were a prepetition claim in the bankruptcy case filed by this debtor on February 9, 1987.

IT IS SO ORDERED.

---

**37.** *Accord In re Epstein,* 200 B.R. 611, 613 (Bankr.S.D.Ohio 1996) (in a Chapter 13 case filed on September 6, 1989, "the Debtors' 1989 income tax year ended on December 31, 1989, and ... income taxes for 1989 were payable by April 15, 1990. Accordingly, the 1989 income tax liability is a postpetition debt.")